## PEOPLE v HART

Docket No. 86747. Submitted March 11, 1987, at Lansing. Decided July 20, 1987.

Ricardo Hart was convicted of first-degree felony murder, armed robbery, and possession of a firearm during the commission of the felony, following a jury trial in Washtenaw Circuit Court, Ross W. Campbell, Jr., J. The theory of the prosecution was that defendant planned the armed robbery, provided the actual perpetrator of the crime with the firearm used to commit the armed robbery and arranged for and assisted in the escape following the robbery and murder. Defendant appealed.

The Court of Appeals *held:*

1. There was sufficient evidence apart from defendant's inculpatory statement from which the jury could find that the murder of the victim took place during the commission of an armed robbery.

2. The jury could properly find from the evidence establishing that defendant planned the crime, supplied the gun and assisted in the escape that malice on the part of defendant existed, since his actions indicate that the criminal enterprise was cooperative in nature and malice could be imputed from his wilful and wanton disregard of the likelihood that the natural tendency of his behavior was to cause death or serious bodily injury.

3. The jury instructions taken as a whole adequately in-

REFERENCES

Am Jur 2d, Criminal Law § 134.
Am Jur 2d, Homicide §§ 45, 50, 51.
Am Jur 2d, Jury § 173.
Am Jur 2d, Malice §§ 4-7.
Am Jur 2d, Trial § 306.
Am Jur 2d, Venue §§ 59, 60.
Propriety and prejudicial effect of comments by counsel vouching for credibility of witnesses—federal cases. 78 ALR Fed 23.
Propriety and prejudicial effect of comments by counsel vouching for credibiilty of witnesses. 45 ALR4th 602.
Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.
Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.

formed the jury that it must find personal malice on defendant's part in order to convict defendant of first-degree felony murder.

4. While it was improper for the prosecution to vouch for the credibility of certain witnesses even though the vouching was in response to the goading of defense counsel, reversal is not mandated because the trial court instructed the jury to disregard any comments of counsel relative to credibility and ascertained that the jury would disregard those remarks.

5. No error mandating reversal resulted from the prosecution's eliciting that defendant was receiving welfare benefits at the time of the crime, since that testimony was in rebuttal to testimony elicited by defense counsel that defendant was employed at the time of the crime.

6. The trial court properly denied the motions for a change of venue since, despite the pretrial publicity, it was possible to seat a jury of persons who indicated that they would rely only upon the evidence presented at trial in rendering a verdict.

7. On appeal, defendant asserted that he had made a prima facie showing that the prosecution had systematically used peremptory challenges to strike black veniremen from the jury panel. The prosecution, in response, asserted that there is a neutral explanation for its use of the peremptory challenges. The determination of whether there is a prima facie showing of discriminatory use of peremptory challenges and, if so, whether there was a neutral explanation are better decided by the trial court in the first instance. A remand for such determination by the trial court is necessary, the Court of Appeals retaining jurisdiction.

Remanded.

1. CRIMINAL LAW — EVIDENCE — CONFESSION.
   All elements of a criminal offense must be established independent of a confession.

2. HOMICIDE — FELONY MURDER — INTENT — MALICE.
   A conviction of felony murder requires proof that the defendant acted with malice aforethought; proof of that intent may be shown by proof of an intent to kill, an intent to do serious bodily harm or a wilful and wanton disregard of the fact that the natural tendency of one's behavior is to cause death or great bodily harm.

3. HOMICIDE — FELONY MURDER — AIDING AND ABETTING — INTENT — MALICE.
   Malice necessary to support a conviction of an aider and abettor

of first-degree felony murder is present where it is shown that the defendant knew that the principal intended to kill the victim of the underlying felony or to act in a manner which was likely to cause the death of or great bodily harm to the victim; a jury may properly infer malice to a person who plans an armed robbery and provides the principal with a gun and provides a manner for the principal's escape since, under those circumstances, the jury could find that the aider and abettor's actions were in wilful and wanton disregard of the natural tendency for death to result.

4. TRIAL — PROSECUTORIAL COMMENT — VOUCHING FOR WITNESSES — CURATIVE INSTRUCTIONS.

It is error for the prosecution to vouch for the credibility of any witnesses even where such vouching was in response to an assertion by defense counsel that even the prosecution would not vouch for the witnesses; however, reversal is not mandated where the trial court instructs the jury that it is improper for either counsel to express a personal opinion as to the credibility of witnesses and that the members of the jury should disregard such comments by counsel.

5. CRIMINAL LAW — EVIDENCE — PUBLIC ASSISTANCE — REBUTTAL.

No manifest injustice occurs from the prosecution's eliciting the fact that defendant was on public assistance at the time of the crime where such testimony is in rebuttal to testimony elicited by defense counsel to the effect that defendant was employed at the time of the crime.

6. CRIMINAL LAW — CHANGE OF VENUE — PRETRIAL PUBLICITY.

The existence of pretrial publicity does not by itself require a change of venue; if jurors can lay aside their impressions or opinions and render a verdict based on the evidence presented in court, a change of venue is not necessary; for a change of venue to be granted, the defendant must demonstrate that there has been a pattern of strong community feeling or bitter prejudice against him and the publicity must be so extensive and inflammatory that jurors could not remain impartial when exposed to it.

7. CONSTITUTIONAL LAW — EQUAL PROTECTION — JURY — PEREMPTORY CHALLENGES — RACIAL DISCRIMINATION.

A criminal defendant is denied equal protection of the law where the prosecution systematically uses peremptory challenges to strike black veniremen from a jury panel; once the defendant establishes a prima facie case of purposeful discrimination in the use of peremptory challenges, the prosecution must come

forward with a neutral explanation for its action; the claim and proofs establishing discrimination and any explanations for the use of the peremptory challenges should initially be raised, presented and argued in the trial court rather than on appeal.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *David A. King,* First Assistant Prosecuting Attorney, for the people.

*Douglas R. Mullkoff,* for defendant on appeal.

Before: SAWYER, P.J., and McDONALD and H. J. SZYMANSKI,* JJ.

PER CURIAM. Defendant was convicted by jury of first-degree felony murder, MCL 750.316; MSA 28.548, armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm during the commission of a felony, MCL 750.227(b); MSA 28.424(2). Defendant was sentenced to life in prison for the murder conviction and to a consecutive two-year term on the felony-firearm charge. The armed robbery conviction was vacated by the trial court on double jeopardy grounds. Defendant appeals as of right.

The first issue we address is defendant's argument that the trial court erred in denying his motions for directed verdict and for a new trial. Defendant argues that the evidence was insufficient to sustain the jury's verdict of felony murder and that the verdict was against the great weight of the evidence.

When ruling on a motion for a directed verdict of acquittal, the trial court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *People v Duenaz,* 148

* Circuit judge, sitting on the Court of Appeals by assignment.

Mich App 60, 64; 384 NW2d 79 (1985); *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979), cert den 449 US 885 (1980).

Defendant contends that there was no evidence apart from a statement ("We only got $5.00.") attributed to him which would support a finding that the murder occurred during the commission of a felony, specifically an armed robbery. In Michigan, all elements of an offense must be established independent of a confession. *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973), adopting the dissenting opinion of then-Judge LEVIN at 39 Mich App 483, 494-506; 197 NW2d 874 (1972).

Our review indicates that ample circumstantial evidence apart from the admission was introduced to indicate that the murder occurred during an armed robbery. The victim, Nancy Faber, left her home in the early evening hours of November 22, 1983, to run some errands and to do some grocery shopping. She was carrying a purse. Nancy Faber bought groceries at a nearby Kroger store and paid for them with a check. The cash register receipt indicated the purchase was made at 7:56 P.M. At 8:11 P.M., a passing motorist noticed the victim's car parked on the side of a road a short distance from the Kroger store with the victim slumped over the wheel. She had been shot once in the head at close range. No purse, checkbook, or identification was found in the car or in the victim's coat. This evidence amply justified the conclusion that the victim had been shot and robbed during the brief interval between the time she left the store and the time she was discovered by a passing motorist. This is not a situation where the felony element of the felony murder conviction was established solely by a statement made by the defendant.

More troublesome is defendant's assertion that

there was insufficient evidence from which a rational jury could conclude that he acted with a level of intent necessary to sustain a murder conviction. In *People v Aaron,* 409 Mich 672, 714; 299 NW2d 302 (1980), our Supreme Court held that malice aforethought, the element essential to distinguish murder from other forms of homicide, could be proven by evidence of various levels of intent: an intent to kill, an intent to do serious bodily injury, or wanton and wilful disregard of the fact that the natural tendency of one's behavior is to cause death or great bodily harm.

In *People v Kelly,* 423 Mich 261, 278; 378 NW2d 365 (1985), the Supreme Court held that when a defendant is tried on a theory of aiding and abetting a felony murder, as defendant was here, it must be shown that he acted with the same intent as would be necessary to convict him of the crime as the principal. The aider and abettor's state of mind may be inferred from a consideration of *all* the facts and circumstances, such as the kind of weapon used, the nature of the wounds inflicted, the circumstances surrounding the killing, or the acts, conduct and language of the accused or any other circumstantial evidence. 423 Mich 275.

In the instant case, there was evidence that defendant instructed Machelle Pearson, the codefendant, to ask the first unaccompanied woman to come out of the Kroger store for a ride. Defendant supplied Pearson with a loaded .38 caliber gun, which she was to use to take the woman's purse once they had driven away from the store. Defendant followed in his car. Once the victim's car came to a stop, defendant pulled up behind and he and Pearson made their escape. We conclude that defendant acted with a sufficient criminal intent to sustain his conviction for murder. His actions in planning the robbery, supplying the loaded

weapon, and providing a means of escape indicate that the criminal enterprise was cooperative in nature. *Kelly, supra,* p 280. More importantly, his actions may be characterized as a wanton or wilful disregard of the likelihood that the natural tendency of his behavior was to cause death or serious bodily injury. The very essence of armed robbery is the procurement of another's property through threat of death or bodily injury. The jury could infer that, by creating the inherently dangerous situation, defendant was aware that there was a likelihood Pearson would harm the victim if she resisted the robbery attempt.

We also conclude that the trial court acted within the limits of its discretion in finding the verdict was not against the great weight of the evidence.

As to defendant's argument that the instructions were misleading and permitted the jury to convict on the murder charge on less than sufficient evidence of personal malice, we disagree. The trial court instructed the jury that in order to convict defendant of felony murder, it must find:

> [F]ourthly, that this crime which occurred, first degree felony murder, was fairly within the criminal plan and that the defendant might have expected this to happen in the course of committing the armed robbery. That is, both Machelle Pearson and this defendant, Ricardo Hart, might have expected this to occur in the course of committing the armed robbery.

Other instructions advised the jury that both Pearson and defendant had to have specific intent to commit the crime and that the malice element could be established by a finding of an intent to kill, an intent to inflict serious bodily harm, or by wanton and wilful disregard, if the natural ten-

dency of the conduct is to cause death or serious injury. Thus, the instructions as a whole were adequate and properly informed the jury.

Next, defendant argues that during closing argument the prosecutor impermissibly vouched for the credibility of two witnesses and indicated his personal belief in defendant's guilt. In rebuttal argument, the prosecutor stated:

> I'll vouch for the credibility because Tony Frazier and Mary Gordon, however reluctantly, told you the truth. It is as simple as that, however much defense or anybody else may dislike them. Why give immunity if he wasn't involved? Mackie [the prosecutor] says he was never a suspect. I never said that. The police made it clear in their testimony Tony Frazier was a suspect because Mary—excuse me—Machelle Pearson made him one. They checked it out. They didn't just take her word and charge him. They checked all of this out. They took a long time to arrest Ricardo Hart. Why is that? Because they checked out everything and made absolutely one hundred percent sure with no room for doubt.

This argument was in rebuttal to defense counsel's argument that the length of time the police waited to arrest defendant was suspicious and to the following statement:

> I don't think with good credible evidence [the prosecutor] has even put my client at the scene. He has put him there through the mouths of two people who have been highly motivated. Even he himself does not wish to vouch for them. We are not talking about pillars of the community.

After the prosecutor's rebuttal argument was concluded, defense counsel objected to the prosecutor's statement, quoted above, and the trial court gave the following curative instruction:

Before I get into the regular instructions, I want to give you a special instruction. I am going to ask you if anybody on the jury feels that they can't follow these instructions: in the heat of argument, sometimes attorneys become somewhat impassioned and overstep the ground rules for arguments by expressing their own opinion as to the truthfulness of certain witnesses or their own opinion as to the guilt or innocence of the defendant or their own opinion as to the manner in which the opposite side conducts its case. Now, these are forbidden by the ground rules but sometimes being human in the heat of combat it is not too uncommon for that to happen. Now, all of these are improper and I am going to instruct the jury to strictly disregard anything said by either attorney in their arguments to the jury that purported to express their own opinion, that is, attorney's own opinion as to the truthfulness of certain witnesses or of the guilt or innocence of the defendant or of the manner in which the opposite side conducted its case. Counsel can't vouch for those things or express their own opinion.

Now, is there anybody on the jury that feels that they can't follow that instruction and disregard those things which have been purportedly said that were over the boundary? Anybody that can't follow that? If so, please raise your hands.

No hands raised. Let me ask you affirmatively can everybody on the jury follow that instruction and disregard those things said by counsel? If so, please raise your hands. We have all 14 hands raised. Thank you very much.

While the prosecutorial comments were improper, they were induced by and responsive to arguments made by defense counsel. Also, a curative instruction was given. Under these circumstances reversal is not required. *People v Duncan,* 402 Mich 1, 16-17; 260 NW2d 58 (1977); *People v Pomranky,* 62 Mich App 304, 310-311; 233 NW2d 263 (1975), lv den 397 Mich 823 (1976).

Defendant also argues that error occurred because, on the redirect examination of Tony Frazier, a prosecution witness, the prosecutor elicited the fact that defendant was on general assistance at the time the crime was committed.

No objection was raised to the testimony during trial. Thus, appellate review is foreclosed absent manifest injustice. *People v Ng,* 156 Mich App 779, 784; 402 NW2d 500 (1986). The testimony that defendant was receiving welfare benefits was introduced to counter evidence which defense counsel had elicited on cross-examination of Frazier that defendant was employed. This is not a case where evidence that defendant received welfare benefits was introduced in an attempt to prove that the defendant, for that reason, was more likely to have committed the crime. No manifest injustice occurred.

Next, defendant argues that he was denied a fair trial because the circuit court twice denied motions for a change of venue. Defendant submitted evidence to the trial court of extensive pretrial publicity.

In *People v Prast (On Rehearing),* 114 Mich App 469, 477; 319 NW2d 627 (1982), this Court stated:

> The existence of pretrial publicity does not by itself require a change of venue. *Murphy v Florida,* 421 US 794; 95 S Ct 2031; 44 L Ed 2d 589 (1975). If jurors can lay aside their impressions or opinions and render a verdict based on the evidence presented in court, a change of venue is not necessary. *Irvin v Dowd,* 366 US 717, 722-723; 81 S Ct 1639; 6 L Ed 2d 751 (1961); [*People v*] *Swift* [172 Mich 473, 481-482; 138 NW 662 (1912)]; *People v Dixon,* 84 Mich App 675, 679; 270 NW2d 488 (1978). For a change of venue to be granted, the defendant must demonstrate that there is a pattern of strong community feeling or bitter preju-

dice against him, and the publicity must be so extensive and inflammatory that jurors could not remain impartial when exposed to it. [*People v*] *Clay* [95 Mich App 152, 160; 289 NW2d 888 (1980)]; [*People v*] *Collins* [43 Mich App 259, 262; 204 NW2d 290 (1972)].

The denial of a motion for change of venue is within the trial court's discretion and its exercise of that discretion will not be reversed unless there has been an abuse of discretion. *People v Jancar,* 140 Mich App 222, 229; 363 NW2d 455 (1985). A trial court may in its discretion elect to defer determination on a request for a change of venue until jury selection has been attempted in the original county. *People v Collins,* 43 Mich App 259, 262; 204 NW2d 290 (1972), lv den 391 Mich 798 (1974), cert den 419 US 866; 95 S Ct 121; 42 L Ed 2d 103 (1974).

While there was widespread publicity in the instant case, it appears that through careful and considered effort an impartial jury was selected. The jury voir dire lasted seven days. The veniremen were screened and instructed as a group by Judge Campbell and then questioned individually by the judge and each attorney out of the presence of the rest of the venire. Of the twelve jurors who decided the case, three had not previously heard anything about the case. Another juror had been out of town when the murder occurred and had seen only one article about the case. That juror and the remaining eight stated that they were able to and would rely only on the evidence presented at trial in rendering their verdict. The trial court did not abuse its discretion by denying defendant's motion for change of venue. For an analogous case which reached a similar result, see *People v Furman,* 158 Mich App 302, 321-322; 404 NW2d 246 (1987).

Defendant's final argument is that he was denied equal protection of the law because the prosecutor systematically used his peremptory challenges to strike black veniremen from the jury panel. The United States Supreme Court has recently articulated a new standard to adjudge such claims. *Batson v Kentucky,* 476 US —; 106 S Ct 1712; 90 L Ed 2d 69 (1986). The Supreme Court has also held that the *Batson* standard is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final at the time *Batson* was decided. *Griffith v Kentucky,* 479 US —; 107 S Ct 708; 93 L Ed 2d 649 (1987).

*Batson* requires that, if defendant establishes a prima facie case of purposeful discrimination, the prosecutor must come forward with a neutral explanation for his actions. In the instant case, the defendant asserts on appeal that a prima facie case was established. The prosecutor on appeal offers reasons for each instance in which he peremptorily excluded a black venireman and asserts that the proffered reasons are neutral. However, such determinations are better decided by the trial court in the first instance. Accordingly, the case is remanded with the instruction the trial court apply the *Batson* standard. We retain jurisdiction.

Remanded for further proceedings consistent with this opinion.