593 So.2d 1161 (1992)
Labron Cardilia MARSHALL, Appellant,
v.
STATE of Florida, Appellee.
No. 89-01760.
District Court of Appeal of Florida, Second District.
February 12, 1992.
Ricky E. Williams, Tampa, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Erica M. Raffel, Asst. Atty. Gen., Tampa, for appellee.
ALTENBERND, Judge.
Labron Cardilia Marshall appeals his convictions for capital sexual battery and lewd and lascivious conduct. We conclude that the trial court erred in failing to conduct a *1162 Neil[1] inquiry after the state had struck two of the three African-American jurors on the venire from which the jury was selected. Because the trial court did not require the state to explain the reasons for the peremptory challenges and because the record strongly suggests that the state in fact had valid reasons to exercise these challenges, we remand this case to the trial court to conduct an evidentiary hearing on the Neil issue. If the state establishes beyond a reasonable doubt that both peremptory challenges were proper, the defendant's convictions should stand. Otherwise, the trial court must order a new trial. We reject the defendant's other issues without discussion.

THE NEIL ERROR
This case involves an alleged capital sexual battery by a young African-American man. The alleged four-year-old victim is the child of the defendant's girlfriend. The first signs of possible sexual abuse were noticed by the child's baby-sitter, who then informed the child's aunt. The defendant, the child, the mother, and all of the state's primary witnesses are African-Americans.
During jury selection, the state left one black man on the jury and elected to have a black alternate juror. The state, however, peremptorily challenged two potential jurors who were relatively young African-American men. The defendant objected to the use of both challenges.
The prosecutor responded to the objections by arguing that a Neil inquiry was not required unless there was a pattern of exclusion of black members. She maintained that since she had left an African-American on the jury, the defendant had not and could not establish a prima facie "strong likelihood" of racially motivated peremptory strikes. This argument has been rejected. State v. Slappy, 522 So.2d 18 (Fla. 1988), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); Thompson v. State, 548 So.2d 198 (Fla. 1989); Smith v. State, 571 So.2d 16 (Fla.2d DCA 1990). While the acceptance of one black juror may be relevant to the overall determination of "strong likelihood," it cannot be a legal basis by itself for avoiding a Neil inquiry in a situation involving multiple peremptory strikes.[2]
The defendant's showing of a strong likelihood of a racially motivated challenge was weak at best. Nevertheless, we conclude that he raised a doubt which required a Neil inquiry under the "broad leeway" given the defendant. Slappy, 522 So.2d at 22. Even if the showing was insufficient after the first strike, the trial court should have conducted an inquiry as to both strikes when the state relied on its acceptance of an African-American juror to avoid a Neil inquiry during the second objection. Williams v. State, 574 So.2d 136 (Fla. 1991). Thus, we cannot affirm the defendant's convictions at this point in the proceedings.

THE APPROPRIATE CONSTITUTIONAL REMEDY
The appropriate constitutional remedy for this procedural error has caused us considerable difficulty. On one previous occasion this court remanded a Neil issue for an evidentiary hearing. Pearson v. State, 514 So.2d 374 (Fla.2nd DCA 1987), review dismissed, 525 So.2d 881 (Fla. 1988). The supreme court expressly approved "the result reached by Pearson" in an opinion that did not focus on the remand for an evidentiary hearing. Reynolds v. State, 576 So.2d 1300, 1303 (Fla. 1991). The Fifth District has expressed conflict with the remedy provided in Pearson and has certified the issue to the supreme court. Johans v. State, 587 So.2d 1363 (Fla. 5th *1163 DCA 1991), review granted, No. 79,046 (Fla. Dec. 11, 1991).
In Blackshear v. State, 504 So.2d 1330 (Fla. 1st DCA 1987), the First District allowed the state, at a posttrial hearing, to explain its reasons for exercising numerous peremptory challenges. The supreme court held that this posttrial hearing was untimely. Blackshear v. State, 521 So.2d 1083 (Fla. 1988). In Blackshear, unlike this case, the record contained "no indication that any of the excluded blacks would be unfair or partial." 521 So.2d at 1084. Moreover, the state was obligated to establish that eight peremptory challenges were appropriate, a far more difficult task than is presented by the two challenges in this case. Blackshear does not expressly create a per se rule requiring a new trial as the only remedy in all cases. Since the supreme court declined to review Pearson after it had decided Blackshear and in light of the extensive case law allowing this remedy in other jurisdictions, we will not assume that Blackshear created a per se rule.
Although a new trial may often be the only adequate remedy for this type of error, see, e.g., Stubbs v. State, 540 So.2d 255 (Fla. 2d DCA 1989), we do not believe that the United States Constitution or the Florida Constitution prohibits an evidentiary hearing as an appropriate initial remedy. Based on the record in this specific case, we conclude that the state should be given an opportunity to prove that its two peremptory challenges were race neutral and not a pretext.[3]
The possibility of racial discrimination during jury selection involves two distinctly different types of errors. First, the trial court may fail to perform a Neil inquiry even though the defendant has properly objected and the factual circumstances require an inquiry. Second, the trial court may conduct a Neil inquiry, require an explanation from the state, but then incorrectly accept invalid reasons for state's use of a peremptory challenge. See Neil; Slappy.
Concerning the second type of error, the jury does not include the relevant juror and does include some other person. It is impossible to know whether the jury would have reached the same verdict had it included the juror who was struck for an impermissible reason. Accordingly, even under the harmless error analysis mandated by section 924.33, Florida Statutes (1991), the only appropriate remedy is to remand such a case for a new trial.
Section 924.33 respects the constitutional right to a fair trial free of harmful error but directs appellate courts not to apply a standard of review which requires that trials be free of harmless errors. The authority of the legislature to enact harmless error statutes is unquestioned. Contraposed to this legislative authority, the courts may establish the rule that certain errors always violate the right to a fair trial and are, thus, per se reversible. To do so, however, we are obligated to perform a reasoned analysis which shows that this is true, and that, for constitutional reasons, we must override the legislative decision.
State v. DiGuilio, 491 So.2d 1129, 1134 (Fla. 1986) (emphasis in original, footnote omitted). When a jury has a membership that is different from that which should have heard the case, it is fair to suggest that the error may go to the "structure" of the trial and is not subject to harmless error analysis. Arizona v. Fulminante, ___ U.S. ___, ___-___, 111 S.Ct. 1246, 1263-65, 113 L.Ed.2d 302, 329-33 (1991) (Rehnquist, C.J., concurring, for the court).
Concerning the first type of error, the failure to conduct an inquiry, it is entirely possible that the defendant was tried by the proper jury. The state may have had a valid reason to exercise its peremptory challenge but was not required to announce that reason on the record. In such a case, the procedural error may be harmless.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court left open the question of what relief an appellate court may order when a *1164 trial court fails to make a proper inquiry. Since then, several federal courts have authorized or approved of post-trial hearings to determine whether the prosecution had a valid race neutral explanation to support its peremptory challenge of a prospective juror. See United States v. David, 803 F.2d 1567 (11th Cir.1986), remanded, 662 F. Supp. 244 (N.D.Ga. 1987), affirmed on remand, 844 F.2d 767 (11th Cir.1988) (after evidentiary hearing, the "prosecutor rebutted the defendant's prima facie case by articulating `clear and reasonably' specific explanations for the strikes"); see also United States v. Alvarado, 923 F.2d 253 (2nd Cir.), affirmed on remand, 951 F.2d 22 (2nd Cir.1991) (after written submissions and oral argument, defendant "had not sustained his burden of persuading that the prosecutor had acted with discriminatory intent"); United States v. Hughes, 880 F.2d 101 (8th Cir.1989), affirmed on remand, 911 F.2d 113 (8th Cir.1990) (after hearing, "government's reasons for all challenges were reasonably neutral, not pretextual"); United States v. Garrison, 849 F.2d 103 (4th Cir.), cert. denied, 488 U.S. 996, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988); United States v. Davis, 816 F.2d 433 (8th Cir.1987), cert. denied, 488 U.S. 832, 109 S.Ct. 88, 102 L.Ed.2d 64 (1988), affirmed on remand, 871 F.2d 71 (8th Cir.1989) (at Batson hearing, the "government sufficiently articulated racially neutral reasons for its exercise of peremptory challenges"); United States v. Chalan, 812 F.2d 1302 (10th Cir.1987) (cited in Pearson).
Further, numerous state courts have authorized similar types of hearings. See Ex Parte Bankhead, 585 So.2d 112 (Ala. 1991); Congdon v. State, 261 Ga. 398, 405 S.E.2d 677 (1991); People v. Garrett, 139 Ill.2d 189, 151 Ill.Dec. 329, 564 N.E.2d 784 (1990); Love v. State, 519 N.E.2d 563 (Ind. 1988); State v. Hood, 242 Kan. 115, 744 P.2d 816 (1987), appeal after remand, 245 Kan. 367, 780 P.2d 160 (1989) (state provided sufficiently neutral reasons to challenge jurors); Abram v. State, 523 So.2d 1018 (Miss. 1988); People v. Scott, 70 N.Y.2d 420, 522 N.Y.S.2d 94, 516 N.E.2d 1208 (1987) (Batson hearings are permissible, but inappropriate in this case); State v. Jones, 293 S.C. 54, 358 S.E.2d 701 (1987); State v. Span, 819 P.2d 329 (Utah 1991) (applying the Slappy criteria); State v. Mims, 505 So.2d 747 (La. App. 1987), appeal after remand, 524 So.2d 526 (La. App. 1988) (trial court properly found "that prosecutor provided racially neutral explanations for the use of the disputed peremptory challenges"); Chew v. State, 317 Md. 233, 562 A.2d 1270 (1989); People v. Hart, 161 Mich. App. 630, 411 N.W.2d 803 (1987), appeal after remand, 170 Mich. App. 111, 427 N.W.2d 557 (1988) ("defendant failed to make out a prima facie case of discrimination"); State v. Robinson, 811 S.W.2d 460 (Mo. App. 1991); State v. Moore, 109 N.M. 119, 782 P.2d 91 (App.), cert. denied, 109 N.M. 54, 781 P.2d 782 (1989), appeal after remand, 111 N.M. 619, 808 P.2d 69 (App.) (trial court "could reasonably find that the state met its burden in showing that its reason for using a peremptory challenge to challenge the juror was racially neutral"), cert. denied, 111 N.M. 706, 809 P.2d 56 (1991); Hawkins v. State, 783 S.W.2d 288 (Tex. App. 1989), appeal after remand, 793 S.W.2d 291 (Tex. App. 1990) ("the record supports the trial court's ruling that this challenge was not for racial reasons"). While some courts have allowed post-trial hearings for cases that fall within the window period of cases tried before Batson but decided afterwards, others have allowed such hearings for cases tried after Batson.[4]
The record in this case contains a full transcript of the jury selection process. From this transcript it appears that the prosecutor believed that black jurors would fairly try this case and probably was exercising her peremptory challenges for reasons other than racial prejudice. The state needed a jury that would not discriminate against the African-American victim and the other African-American witnesses. *1165 The prosecutor left a black member on the jury and selected a black alternate juror. The two jurors who were challenged were African-American, but were also relatively young men who either lived or worked around young children. A reasonable attorney could fear that such prospective jurors would be more likely to identify with the young defendant and to have a heightened concern about false accusations by children. Significantly, the African-American juror who was left on the panel did not share these similarities with the defendant.
In both criminal and civil cases, it has long been a recognized practice of trial attorneys to strike jurors when the attorneys believe that the jurors are likely to identify with the other party. Trial attorneys believe that a jury with several persons who identify with one side or the other is a jury that is likely to either reach no verdict or to reach a skewed verdict, unrepresentative of a fair cross-section of our population. From the cold record, it appears likely that the prosecutor was exercising her peremptory challenges for such reasons. We do not read Neil, Slappy, and their progeny to preclude this time-honored practice.
In deciding to allow an evidentiary hearing before making a decision on the necessity of a new trial, we have taken into account various factors including the existence of a record, the content of the record, and the lapse of time since the trial. We have also considered the interests of the victim, the child's family, the defendant, and the judicial system. The defendant was tried by a jury that included men and women as well as members of at least two distinct ethnic groups. If the procedural error was in fact harmless, the defendant's arguments would not seem sufficient to require the child and the family to be subjected to another trial.

THE EVIDENTIARY HEARING ON REMAND
The initial Neil inquiry is currently a brief procedure that requires only a simple explanation by the state. Reynolds, 576 So.2d at 1301. In order to fully protect the defendant's rights and to assure that Neil provides a remedy equal to or greater than that provided in Batson, we require the trial court to conduct a full evidentiary hearing at this stage in the proceedings. The judge who presided over jury selection should conduct the hearing. The prosecutor who exercised the peremptory challenges must testify under oath concerning the actual reasons she relied on to exercise these challenges at the time of trial.
The state has the burden of proving that its reasons for challenging these two men were race neutral and not a pretext. We require the state to establish the validity of its peremptory challenges beyond a reasonable doubt. See DiGuilio. We understand that the prosecutor may be unable to explain or recall her reasons for a peremptory challenge on remand. In that event, the trial court must order a new trial. Once the trial court has conducted the evidentiary hearing, further appellate rights will exist as explained in Pearson.
In remanding this case, we repeat the admonition that, merely because the appellate record suggests to us that valid reasons for the state's peremptory challenges may exist, it does not dispense with the state's obligation on remand to fulfill its heavy burden of proof in the trial court.
Remanded for further proceedings in accordance with this opinion.
DANAHY, A.C.J., and CAMPBELL, J., concur.
NOTES
[1] State v. Neil, 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986), and clarified, State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988).
[2] We do not suggest that the prosecutor acted with any racial prejudice. Instead, it appears that she was unaware of the applicable case law. During her argument, she noted that the child victim and the state's witnesses were black, and implied that she would need jurors who would rely on these witnesses.
[3] Obviously, if we have misconstrued the rule announced in Blackshear, the supreme court can quickly correct this error because our opinion conflicts with Johans.
[4] While Pearson appears to fall within the category of window cases, one can argue that it actually involves a post-window case because the Florida Supreme Court had decided Neil prior to the trial in Pearson. Reynolds v. State, 576 So.2d 1300 (Fla. 1991) (Neil provides equal or greater protection than the federal law expounded in Batson).