# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CORNELIUS MICKELS,

        Defendant-Appellant.

UNPUBLISHED
September 6, 2016

No. 326849
Oakland Circuit Court
LC No. 2014-251633-FC

Before: K. F. KELLY, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant, Cornelius Mickels, appeals by right his jury convictions of two counts of armed robbery. MCL 750.529. The trial court sentenced him to serve concurrent terms of 10½ to 30 years in prison for each conviction. For the reasons explained below, we affirm his convictions, but remand this case to the trial court for further proceedings under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

## I. BASIC FACTS

Mickels' convictions arise from the robbery in August 2014 of the Walmart store where he worked. The prosecution's theory was that Mickels came to the store—ostensibly to shop—at a time when he expected management to be removing cash from several registers; he then coached Aaron Powell to rob the employees of the cash at the opportune time. Powell fled with the assistance of Ledell Hammond. The prosecution presented evidence that two employees were emptying cash registers after 11:00 p.m. when a man armed with a handgun demanded that the money be put in a duffle bag, that police officers responding to the scene arrested Powell and Hammond, both of whom linked Mickels to the crime, that the officers also found a duffle bag containing bundles of cash along with a gym card and other paperwork bearing Mickels' name, and that Mickels and Powell spoke on the phone and exchanged text messages shortly before the robbery.

## II. ANALYSIS

### A. BRIEF ON HIS OWN BEHALF

In a brief submitted on his own behalf, Mickels argues that his trial lawyer was ineffective. Specifically, he argues that his lawyer should have investigated and called certain

-1-

witnesses and should have objected to the prosecutor's closing remarks. Because the trial court did not hold an evidentiary hearing on this issue, our review is for mistakes that are apparent on the existing record. *People v Cox*, 268 Mich App 440, 453; 709 NW2d 152 (2005).

In order to prove that his lawyer was ineffective, Mickels must show that his trial lawyer's representation fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for the errors, the outcome of the proceedings would have been different. *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864. Mickels must overcome a strong presumption that his lawyer's decisions concerning the choice of witnesses or theories to present were exercises of sound trial strategy. *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999); *People v Julian*, 171 Mich App 153, 158-159; 429 NW2d 615 (1988). To overcome that presumption, he must show that his lawyer's failure to prepare caused him to be ignorant of substantially beneficial evidence. *People v Caballero*, 184 Mich App 636, 640, 642; 459 NW2d 80 (1990). However, "the failure to interview witnesses does not itself establish inadequate preparation." *Id.* at 642.

## 1. FAILURE TO CALL POWELL AND HAMMOND

Mickels first argues that his lawyer's failure to interview or call Powell and Hammond fell below an objective standard of reasonableness because—Mickels insists—they would have testified that he had nothing to do with the robbery.[1]

This Court denied Powell's application for leave to appeal from his plea-based convictions of armed robbery stemming from the robbery at issue. *People v Powell*, unpublished opinion per curiam of the Court of Appeals, entered November 3, 2015 (Docket No. 329295). Powell's sentencing was pending during Mickels' trial, which would have given him a strong incentive to assert his Fifth Amendment right against self-incrimination rather than accept sole responsibility for the robbery. Further, the presentence investigation report (PSIR) for Powell's case shows that he told officers that Mickels was the chief planner of the robbery. Had Powell offered to testify that Mickels had nothing to do with the robbery, the prosecution would have been able to impeach him with his prior inconsistent statement. Given this record, Mickels' trial lawyer might reasonably have concluded that there was no benefit to investigating or calling Powell. Similarly, the PSIR in Powell's case indicates that Hammond pleaded guilty to resisting or obstructing a police officer and was sentenced to time served. The fact that Hammond avoided responsibility for the robbery charges strongly suggests that he would not have jeopardized his deal in order to raise doubts about Mickels' involvement and a trial lawyer might reasonably conclude that investigating and calling him would be fruitless. Moreover, Mickels does not even assert that he had suggested to his lawyer that he should explore potential opportunities for the defense in connection with Powell or Hammond. Accordingly, on this

---

[1] Mickels offers an affidavit from Powell for the proposition that he would have offered exculpatory testimony, but because that affidavit is not part of the lower-court record we decline to consider it. See MCR 7.210(A).

record, we cannot conclude that Mickels' lawyer's decisions fell below an objective standard of reasonableness under prevailing professional norms. *Gioglio*, 296 Mich App at 22-23.

## 2. PROSECUTORIAL ERROR

Mickels also asserts that the prosecutor erred by offering improper argument, and by suppressing evidence, and that his lawyer was ineffective for "not filing any motions" concerning the prosecutor's errors.

Mickels objects generally that the prosecutor argued that he was guilty, and that Mickels had no innocent reason to be at the store at the time. But Mickels has not identified the statements that he maintains were made in error and does not identify their location in the transcript. See MCR 7.212(C)(7). "A party may not merely state a position and then leave it to this Court to discover and rationalize the basis for the claim." *People v Mackle*, 241 Mich App 583, 604 n 4; 617 NW2d 339 (2000). Further, Mickels does not suggest that the prosecutor argued facts not in evidence, *People v Schutte*, 240 Mich App 713, 721; 613 NW2d 370 (2000), abrogated on other grounds by *Crawford v Washington*, 541 US 36, 64; 124 S Ct 1354; 158 L Ed 2d 177 (2004), improperly invoked the prestige of the prosecutor's office, *People v Jansson*, 116 Mich App 674, 693-694; 323 NW2d 508 (1982), or implied personal knowledge relating to the case, *People v Smith*, 158 Mich App 220, 231; 405 NW2d 156 (1987), but only complains that the prosecutor argued that he was guilty, and suggested that Mickels lacked an innocent explanation for being at the store at the time of the robbery. A prosecutor is "free to argue the evidence and all reasonable inferences arising from it as they relate to the theory of the case." *Schutte*, 240 Mich App at 721. And a prosecuting attorney need not confine argument to the "blandest of all possible terms." *People v Marji*, 180 Mich App 525, 538; 447 NW2d 835 (1989) (internal quotation marks and citation omitted). It was not improper for the prosecutor to urge the jurors to find Mickels guilty. Moreover, the prosecutor's argument regarding Mickels' motive for being in the store at the time of the robbery was based on reasonable inferences arising from the evidence. Hence, Mickels has not identified any prosecutorial errors.

Concerning his claim that the prosecutor suppressed evidence, Mickels refers to "text messages . . . asking the manager in charge permission to come shopping and also print his paystub for his landlord," and refers in passing to the decision in *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). In order to warrant relief, the " 'evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' " *People v Chenault*, 495 Mich 142, 149-150; 845 NW2d 731 (2014), quoting *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999).

Mickels does not offer any basis for suspecting that the police department or prosecution suppressed any text messages, or other evidence. Further, taking at face value his assertions concerning what the suppressed messages would have revealed does not demonstrate that the text messages would have been favorable to his defense. Supposedly, Mickels communicated with the store's manager about having benign reasons to come to the store even though he had just earlier called to excuse himself from a scheduled work shift. It was further Mickels' position that it was merely coincidence that he happened to be at the store when the other employees were performing the cash withdrawals and his acquaintances robbed the store. The

prosecution's theory, by contrast, was that Mickels came to the store in order to roam freely as a shopper and thus put himself in the best position to advise his accomplice when it was a good time to strike. The purported text message is consistent with the prosecution's theory. Because Mickels has not shown that the police department or prosecution suppressed any evidence or that the purported evidence would have been favorable to his defense, his claim fails.

There were no prosecutorial errors and, for that reason, Mickels' trial lawyer cannot be faulted for failing to challenge the prosecutor's actions with "motions." See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## B. DUE PROCESS

Mickels' appellate lawyer argues that the trial court violated Mickels' due process rights by improperly answering a question from the jury.

At the close of proofs, the trial court instructed the jury on aiding and abetting, including that "at that time the defendant must have intended the commission of the crime alleged or must have known that the other person intended its commission and that the crime alleged was a natural and probable consequence of the commission of the crime intended," and also that "[e]ven if the defendant knew that the alleged crime was planned or was being committed the mere fact that he was present when it was committed is not enough to prove that he assisted in committing it." The court additionally instructed the jury on the elements of armed robbery, and, as a lesser-included alternative, unarmed robbery.

During deliberations, the jury informed the court that it was confused:

There is some hangup between instructions 8.01 and 18.01 (aiding and abetting vs. robbery)[.] In 18.01, is the defendant Cornelius Mickels or is it Aaron Powel[?] The only confusion comes because in 8.01 Step 1 says charged with commiting robbery or intentionally assisting. Step 2 says defendant can be convicted as an aider and abettor.

However, in 18.01, it says the defendant is charged with robbery. The removal of aiding and abetting causes much of the confusion.

After discussion with both trial lawyers, the trial court responded:

The defendant here is charged with committing the crime of armed robbery as an aider and abetter. The reason you have the elements for armed robbery and unarmed robbery is because first you have to find that either an armed robbery or an unarmed robbery occurred. The defendant is not charged as the person who actually committed that—those crimes, whichever one you decide occurred.

What your charge is with respect to this defendant is to whether or not he intentionally assisted the person who committed the crime in doing so. I hope that clarifies things for you. But you need to first find that the elements, that the prosecution has met the elements of either armed robbery or unarmed robbery.

-4-

That's why you have both of them. That, that has been actually committed, he's—that he has met his burden of proof as to all of those elements.

If you do find that, then you—your next discussion should be as to whether or not the prosecution has proven beyond a reasonable doubt based upon the aider and abetter statute that this defendant intentionally assisted that individual in committing the crime. So—and if you find that he did, then you may find him guilty of one or the other. If you find that he didn't, then it would be not guilty.

After asking whether he approved or disapproved of the response, Mickels' lawyer stated: "I'm satisfied, Your Honor. Thank you." By expressly agreeing with how the trial court responded, Mickels' lawyer waived any claim of error. *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000). Moreover, it is reasonable to conclude that the jury's questions reflected only a desire for information on the interaction between the instruction on the elements of robbery and that on aiding and abetting, which the court ably clarified by stating that Mickels was charged on only an aiding and abetting theory, and that the jurors had to determine if a robbery took place, and, if so, if Mickels participated as an aider and abettor. Because the court provided proper clarification and did not misstate the law, Mickels' lawyer's decision to agree with the trial court's response did not amount to ineffective assistance. *Ericksen*, 288 Mich App at 201; *Gioglio*, 296 Mich App at 22.

## C. SUFFICIENCY OF THE EVIDENCE

Mickels' appellate lawyer also argues that the prosecution failed to present sufficient evidence that Mickels aided and abetted the robbery. When reviewing the sufficiency of evidence in a criminal case, we must view the evidence of record de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could find that each element of the crime was proved beyond a reasonable doubt. *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001).

"Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." MCL 767.39.

A conviction of aiding and abetting requires proof of the following elements: (1) the underlying crime was committed by either the defendant or some other person, (2) the defendant performed acts or gave encouragement that aided and assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time of giving aid or encouragement. [*People v Smielewski*, 235 Mich App 196, 207; 596 NW2d 636 (1999).]

The intent element may be satisfied by proof that the defendant had a specific intent to commit the crime, that the defendant had knowledge of the principal's intent, or that the criminal act committed by the principal was an incidental consequence that might reasonably have been

expected to result as a natural and probable consequence of the intended wrong. *People v Robinson*, 475 Mich 1, 7-9; 715 NW2d 44 (2006). Aiding and abetting involves all forms of assistance rendered to the perpetrator of a crime, including all words or actions that might encourage or support the commission of the crime. *People v Rockwell*, 188 Mich App 405, 411-412; 470 NW2d 673 (1991). In this case, the evidence of Mickels' involvement in the robbery includes admissions to officers, plus circumstantial evidence. See *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993).

On appeal, Mickels' lawyer points out that, when interviewed by officers, Mickels denied involvement in the robbery. However, we must view the evidence in the light most favorable to the prosecution. *Herndon*, 246 Mich App at 415. And there was evidence that Mickels admitted to officers that he spoke with Powell on the phone immediately before the robbery and told him that the store was only sparsely populated, specifically telling him that "they were going to get the cash," and stating, "not too many and it's on you." His lawyer suggests that by the latter comment Mickels was admonishing Powell that he would be acting on his own if he planned on doing anything, but a reasonable fact-finder could also interpret this statement as encouraging Powell to strike while the best opportunity to do so was at hand. Thus, a reasonable fact-finder could infer that Mickels was providing information of critical use to a person intending to commit a robbery, and doing so in furtherance of a plan to take advantage of the window of opportunity arising from management's routine collection of the cash from several registers.

Mickels' lawyer further protests that Powell's possession of Mickels' gym bag did not give rise to an inference that Mickels intended the commission of an armed robbery or knew that Powell had the intent to do so. We agree Powell's use of the gym bag did not by itself establish that Mickels' aided and abetted the robbery, but, when combined with other evidence, it bolsters the notion that Mickels was involved.

His lawyer also flatly insists that "none of the text messages" support the conclusion that Mickels "intended the commission of an armed robbery or had knowledge that Powell intended the commission of an armed robbery." Among the texts was one that Mickels sent to Powell two nights before the robbery, saying "I'm here and tonight would be perf." One could reasonably infer from that evidence that Mickels and Powell were discussing when to execute an existing plan for a robbery of the sort that occurred two days later. Further, the mere existence of text messages between Mickels and Powell on the day of, and the days just preceding, the robbery underscored Mickels' attempt at evasiveness when he initially told the police he had not been in touch with Powell for several months. See *People v Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008) ("A jury may infer consciousness of guilt from evidence of lying or deception."); *People v Hart*, 161 Mich App 630, 635; 411 NW2d 803 (1987) ("The aider and abettor's state of mind may be inferred from a consideration of *all* the facts and circumstances, such as . . . the acts, conduct and language of the accused or any other circumstantial evidence.").

There was sufficient evidence to support Mickels' convictions.[2]

## D. SENTENCING

### 1. OFFENSE VARIABLES

In a supplemental brief submitted after oral arguments, Mickels argues that the trial court erred when it scored Offense Variables (OVs) 4, 10, and 14. Although Michigan's sentencing guidelines are now advisory, our Supreme Court has stated that trial court's must still score them and score them properly. See *Lockridge*, 498 Mich at 391-392, 392 n 28. This Court reviews a trial court's factual findings at sentencing for clear error, but review de novo whether the trial court properly interpreted and applied the sentencing guidelines to the facts. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

If a victim suffered "[s]erious psychological injury requiring professional treatment" during the commission of the sentencing offense, the trial court must score 10 points under OV 4. MCL 777.34(1)(a). The trial court found that one of the robbery victims had suffered a serious psychological injury requiring professional treatment on the basis of the victim's statement to the prosecutor, which was included in the Presentence Investigation Report (PSIR). The fact that a victim has not sought treatment does not preclude a trial court from finding that a victim has suffered a serious psychological injury requiring professional treatment. See MCL 777.34(2). And the victim's statement permitted an inference that the victim had suffered a serious psychological injury that required professional treatment.

The victim related that the "armed robbery was a life changing experience." He explained that he lost "sleep for the first two months after the incident" and is "no longer comfortable handling money." He continues "to live in fear that [Mickels'] families will retaliate" and has tried "to move past the robbery but [] cannot." The victim's assertion that the robbery was a life-changing experience and his statement that he has tried to move past the experience, but has been unable to do so, is evidence that he has suffered a serious psychological injury and that he requires professional treatment to overcome its effects. Accordingly, the trial court did not err when it scored 10 points under this variable. *Hardy*, 494 Mich at 438.

The trial court scored 15 points under OV 10 after it determined that Mickels engaged in predatory conduct. See MCL 777.40(1)(a). Predatory conduct is, in relevant part, "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a).

---

[2] In stating in his brief on appeal that "while an unarmed robbery might arguably be inferred, the evidence did not support the convictions for armed robbery," Mickels' lawyer implies that, as an alternative to outright reversal, this Court might choose to vacate the convictions of armed robbery and remand this case to the trial court for entry instead of convictions of unarmed robbery. See *People v Bearss*, 463 Mich 623, 631; 625 NW2d 10 (2001). However, the circumstantial evidence does not invite parsing the aspects of the apparent plan, which included the use of a gun.

The preoffense conduct must be more than "run-of-the-mill planning to effect a crime," it must be conduct "commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking . . . ." *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011) (quotation marks and citation omitted). Conduct is for the purpose of victimization when done for the primary purpose of eventually causing a person to suffer from an injurious action. *Id.* at 463-464.

Here, there was evidence that Mickels used his knowledge of the store's procedures to arrange to be in a position where he could observe the employees who would empty the registers. He then lay in wait until the employees collected the cash and there were few persons nearby; that is, he lay in wait until the victims were in a position of greatest vulnerability. At that point, he contacted Powell and initiated the robbery. This evidence permitted an inference that Mickels engaged in preoffense conduct directed at the employees who would empty the registers and which was plainly more than run-of-the-mill planning to effect the crime. Indeed, his conduct was directed with the purpose of ensuring that the victims were susceptible to the robbery by being apart from others and burdened with cash. The trial court did not err when it determined that this conduct was predatory and scored 15 points under OV 10. *Hardy*, 494 Mich 430, 438.

This same evidence, along with the evidence of Mickels' role in planning the robbery, permitted an inference that Mickels was the leader of a multiple offender situation. As such, the trial court had to score 10 points under OV 14. See MCL 777.44(1)(a). Mickels maintains that the evidence that he informed Powell about the best time for the robbery was not sufficient to support the score. However, there was also evidence that Mickels originated the plan, supplied equipment, and directed Powell to strike. This evidence supported an inference that he was a guiding or directing head of the group. *People v Ackah-Essien*, 311 Mich App 13, 39; 874 NW2d 172 (2015).

Mickels has not identified any errors in the trial court's scoring of these OVs.

## 2. *LOCKRIDGE*

Mickels' lawyer finally suggests that Mickels is entitled to be resentenced because the trial court determined his minimum sentence using facts not found by the jury or admitted by Mickels. The prosecution agrees that a remand is in order, but that the remand should be for a *Crosby* proceeding.

In *Lockridge*, our Supreme Court held that Michigan's sentencing scheme was unconstitutional to "the extent to which the guidelines *require* judicial fact-finding beyond the facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." *Lockridge*, 498 Mich at 364. The Court further determined that, although the guidelines would remain in effect, the calculated guidelines range was advisory only and sentencing courts departing from guidelines recommendations would no longer be required to articulate substantial and compelling reasons for doing so. *Id.* at 364-365 and n 1. The Court also provided a procedure— referred to as a *Crosby* remand—for determining whether the trial court would have imposed a materially different sentence had it known that the guidelines were merely advisory:

[O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present . . . if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [*Id.* at 398 (internal quotation marks and citation omitted).]

We agree that this procedure applies to the facts of this case. Should this case proceed to resentencing, the trial court should treat the guidelines recommendation as advisory, and if it elects to depart from the guidelines recommendation it should impose a sentence guided by traditional principles of proportionality as set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). See *People v Steanhouse*, 313 Mich 1, 48; 880 NW2d 297 (2015), lv gtd 499 Mich 934 (2016).

Affirmed, but remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause

-9-