700 So.2d 804 (1997)
Terry RITTER, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 97-210.
District Court of Appeal of Florida, Fifth District.
October 29, 1997.
Charles E. Gordon, Winter Park, for Appellant.
Claire Molchan and James A. Sawyer, Orlando, and Cindy M. Rothfeld, Kissimmee, for Appellee.
PETERSON, Judge.
The reason for the delay of almost 27 months between the day of the dependency *805 hearing and the rendering of the order declaring T.R. to be dependent is not explained in the record of this matter.
On April 13,1994, in Polk County, a dependency petition was filed on behalf of appellant's alleged child. In May of 1994, pursuant to a motion filed by the appellant, the case was transferred to the Ninth Judicial Circuit in and for Orange County. On September 28, 1994, a hearing was held on the dependency petition and at the conclusion of the hearing, the trial court informed the parties that a position on the matter had not yet been formulated, but that an attempt in good faith to come up with a decision by Friday at 5:00 p.m. would be made. When the order had not been entered by May 5, 1995, the appellant filed a motion for a status hearing on the matter, and on May 25, 1995, the Guardian ad Litem for the child filed a similar motion. The child's guardian filed a second report on the child's status in August of 1995. On March 26, 1996, the trial court entered an order for a status review hearing for April 16, 1996. When, on October 28, 1996, an order on this dependency case still had not been entered, the appellant filed a petition for writ of mandamus in this court to compel the trial court to issue a ruling. On December 16, 1996, the trial court declared the child to be dependent, ordered the child and his sister to live with the children's maternal great aunt, and transferred the case back to Polk County.
We find this case falls within that class of cases in which trial courts have been sternly admonished for unnecessarily impeding the prompt administration of justice, especially in matters involving child custody. See Falabella v. Wilkins, 656 So.2d 256 (Fla. 5th DCA 1995) (trial judge's delay in custody dispute, in entering custody order more than 16 months after trial, was indefensible and intolerable); Polizzi v. Polizzi, 600 So.2d 490 (Fla. 5th DCA 1992) (three-month delay in entry of final judgment in marriage dissolution case mandated new final hearing where final judgment did not reflect the evidence or the oral pronouncements at trial). Moreover, we find that the delay of nearly 27 months in this case in resolving the question of dependency, coupled with the proceeding for mandamus brought by one of the interested parties, casts sufficient doubt upon the wisdom and fairness of the decisions rendered by the trial judge to require that all of the orders in this matter be vacated and that a new evidentiary hearing be conducted forthwith.
Accordingly, we vacate the orders entered and remand this matter to the Ninth Judicial Circuit in and for Orange County. The chief judge of the circuit shall assign this matter to another judge. Custody of the child declared dependent in this case, as well as that of his older sister (who was declared dependent in an earlier and separate proceeding), shall remain with the children's maternal great aunt, until the matter of this dependency is resolved.
ORDERS VACATED; REMANDED.
COBB, J., concurs.
HARRIS, J., concurs specially, with opinion.
HARRIS, Judge, concurring.
I agree wholeheartedly with Judge Peterson, but I would like to discuss the problem more generally in order to generate further discussion among the courts.
We are again faced with a situation in which the trial court has delayed its decision for over two yearstwenty-seven months to be more specific. The echo of the testimony and the images of the witnesses had long since dimmed before the court finally sat down to decide the critical issue of dependency. And when both parties admit, as they did in this case at oral argument, that the record would support a decision for either party, it is not a persuasive argument that we should affirm because the judgment is supported by the record. That would be true even if the judge decided the outcome by a flip of a coin. Parties are entitled to a decision within a reasonable timea time in which they can expect that the decision was made while the judge could remember the relevant testimony and recall the demeanor of the witnesses.
Some judges, it appears, are like the donkey positioned between two piles of hay. *806 Unable to decide from which pile to eat, the donkey starved to death. Unfortunately, like the donkey, litigants' rights die because of judicial indecisionthe property in litigation loses value or is lost due to foreclosure of a prior mortgage, the inability to pursue or collect a debt leads to bankruptcy, or the child involved in the custody dispute is permitted to bond with the wrong parent. It should be the highest aspiration of every judge to see the justice of the cause and, pursuant to the law and the evidence, expeditiously achieve it. "Justice delayed is justice denied" is not merely a slogan; it is a life truism.
I acknowledge that the trial court is not the sole cause for judicial delay. The appellate court is not immune from valid criticism. Too many of us are so impressed with the style and grace of Brandeis, Cardozo and Hand that we have difficulty in producing a mere workmanlike opinion. Many of our cases are too little, too late. Obviously some delay is built into the system. Review is a thoughtful process and sometimes additional research is required. But few of our cases seriously tax the "little gray cells" and those that do are not made easier by placing them on the shelf. Further, we have adequate personnel to assist in any additional research needed. Thus, prolonged delay can not be justified either because of the complexity of the case or because of our work load.
I strongly suspect that most litigants, their attorneys and the trial judges would be willing to forego a delayed law review-perfect opinion for a timely released, fairly considered opinion clearly expressed in conversational English. I suggest that it is not the litigant's intent to present the courts with some intellectual exercise in acuity; they are presenting us real-life problems. They are not interested in our Socratic analysis; they want a timely and fair resolution. They will judge us not by the quality of our prose but by the quality of our performance. Nothing is as hollow to the litigant as the "perfect" opinion too late.
A timely opinion and a thoroughly considered opinion are not mutually exclusive. However, to provide both takes commitment, organization, discipline, and a strong sense of priority. We are, after all, judges first. Our other commitments, as worthwhile as they might be, should not interfere with our timely handling of the litigants' business.
Both parties to this appeal agree that the amount of delay involved herein is inexcusable. We have so stated in a number of opinions. The time has come, I suggest, to do more than merely complain. It is time for a prophylactic rule, a bright line standard, a time period beyond which a delayed judgment simply will not be recognized. That time period should not exceed six months. Indeed, it is hard to justify a decision delayed more than thirty days. It is hard to imagine any excuse for a trial court not ruling within six months from the completion of the evidence.[1] That gives trial counsel, if they wish to rely on the record produced by the first trial, four months after the sixty-day period that the Rules of Judicial Administration set as the period of time that the judge must rule or report his or her delinquency to the chief judge to take such action as counsel may deem appropriate in order to get the trial judge to rule. In some cases, the circuit simply has no procedure in place to detect a file that has been set aside for further consideration and then forgotten. Joint contact by opposing counsel will bring this problem to the attention of the trial judge. If the problem is greater than this, then counsel may have to notify the chief judge; a second notice to the chief judge should include a copy to the chief justice. Counsel's obligation to aggressively pursue his or her client's interest does not end when the court takes the case under advisement. In that regard, counsel should be reminded that we also have a chief judge. And we also must answer to the chief justice. If trial counsel are unwilling to actively seek to obtain a timely resolution of their client's cases, even at the risk of offending judges, then they must answer to their clients.[2] But there is *807 more than that. Inordinate delay is a lack of professionalism that reflects badly on both the bench and bar. It is a contributing factor in the continuing decline of public respect for lawyers and lawyering and judges and judging. The problem must be addressed.
Since a very high percentage of the trial judges make their decisions well within the sixty-day period set out in the rule, a "bright line" standard would affect only those few who most often cause the problem. Perhaps the supreme court should consider a "bright line" rule for the appellate courts. While there are relatively few appellate judges that hold up decisions, since the appellate court decides by committee, the court is only as effective as its least effective judge.
Courts (at all levels) should no longer tolerate by judicial inaction the denial of the litigants' rights to a timely resolution of their legal conflicts. More supervision must be expected from the chief judges of the individual circuits and more oversight must be expected from the appropriate supervising court.[3] We must admonish the trial courts, and ourselves, not to be donkeys;[4] we should decide and rule in a timely manner.
NOTES
[1] Likewise, it is difficult for an appellate court in non-en banc cases to justify an opinion delayed more than three months from the date of submission.
[2] Appellant in this case is to be commended for his effort to get a resolution of this matter.
[3] Some states have taken the control of judicial delay away from the courts. See, for example, California Constitution, Article VI, Section 19. We should act responsibly to avoid a popular solution to a judicial problem.
[4] I considered an alternative noun but was deterred by propriety and not sentiment.