945 So.2d 614 (2006)
Leonard FARNETH, Petitioner,
v.
STATE of Florida, Respondent.
No. 2D06-2550.
District Court of Appeal of Florida, Second District.
December 22, 2006.
*615 Donna P. Levine of Law Office of Donna P. Levine, West Palm Beach, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, and William I. Munsey, Jr., Assistant Attorney General, Tampa, for Respondent.
STRINGER, Judge.
In this second tier certiorari proceeding, Leonard Farneth contends that the circuit court, sitting in its appellate capacity, departed from the essential requirements of the law when it relied on its own factual findings to reverse the county court's ruling which prohibited the State from using certain evidence as a discovery sanction. We agree and therefore grant Farneth's petition.
In October 2003, Farneth was the subject of a traffic stop after he was seen driving at a high rate of speed and weaving in and out of his lane of travel. During the stop, the officer noted that Farneth had glassy bloodshot eyes, slurred speech, and an odor of alcohol about him. Farneth also performed poorly on field sobriety tests. Farneth was arrested and escorted to the county detention center, where he took a breath test using an Intoxilyzer 5000 machine. The results of this test *616 allegedly showed that Farneth was in violation of section 316.193(1)(c), Florida Statutes (2003), and Farneth was charged with driving under the influence and speeding.
Farneth subsequently moved to suppress the breath test results on the grounds that the machine used during the test had not been maintained in compliance with the specifications in the manufacturer's operating manual. Farneth also argued that the State had refused to furnish him with the manufacturer's operating manuals in violation of various administrative code rules. The court denied Farneth's motion to suppress but also ordered the State to provide Farneth with the requested manufacturer's operating manuals.
Shortly thereafter, the State filed an "Acknowledgement of Additional Tangible Evidence," which listed five different manuals relating to the Intoxilyzer 5000. The State then filed a motion for clarification of the court's earlier order and requested guidance from the court as to how the manuals were to be produced to Farneth. In response to the State's motion, the court entered an order stating, in pertinent part,
The State shall supply the Defendant with copies of the operation manuals, owner's manuals and schematics, which were supplied by the manufacturer of the particular instrument used in this case; or the State shall certify that the materials supplied are identical to the original documents supplied with the breathalyzer instrument used in this case.
Thereafter, the State produced to Farneth a 1984 Intoxilyzer 5000 Operator's Manual, a 1989 Intoxilyzer 5000 Operator's Manual, a 1991 Understanding the Intoxilyzer 5000 Manual, a 1992 Basic Maintenance & Repair Manual, a 1999 Intoxilyzer 5000 Service Manual, and miscellaneous schematics and diagrams.
On the morning of trial, Farneth made an oral motion in limine to prevent the State from mentioning the breath test results until the State could establish that it had complied with the court's discovery order concerning the production of the Intoxilyzer manuals. Farneth argued that the discovery order required the State to produce the manuals applicable to the Intoxilyzer actually used by Farneth and that instead the State had produced manuals that were applicable to several different models. Farneth noted that he had not raised the issue earlier because he had assumed that the State's maintenance officer, who had been identified by the State only the Friday before trial, would testify as to which of the five manuals produced by the State applied to the Intoxilyzer actually used by Farneth. However, Farneth asserted that he had spoken with the maintenance officer for the first time that morning and the maintenance officer could not tell him which manuals applied to the Intoxilyzer at issue. Therefore, according to Farneth, the State had not complied with the discovery order because it had not produced the manuals for the Intoxilyzer actually used by Farneth and because it could not "certify that the materials supplied are identical to the original documents supplied with the breathalyzer instrument used in this case."
In response, the State argued that it had supplied all of the manuals that it had. The court asked the State how Farneth was supposed to know which of the manuals that were produced to him were for the machine Farneth actually used. The State responded that it believed that if Farneth wanted to know more, "he might need to do some research at FDLE." The State also argued that determining which manuals were applicable to the specific machine *617 used by Farneth was irrelevant because "[t]he maintenance person doesn't use any manual, they use FDLE rules."
After extensive argument on the issue, the court held that the State had failed to comply with the plain language of the discovery order concerning production of the Intoxilyzer manuals. The State requested a continuance to obtain the information necessary to comply with the order, but the court denied the motion, noting that the State had had several months in which to comply. The court then entered an order prohibiting the State from using the breath test results as a sanction for its discovery violation.
The State appealed the county court's ruling to the circuit court. The circuit court issued a lengthy opinion in which it held that, regardless of the merits of either party's position as to the State's compliance with the discovery order, the county court had erred by failing to hold a Richardson[1] hearing and by failing to consider less drastic sanctions than exclusion of the evidence. However, rather than remanding the case to the county court for a proper Richardson hearing, the circuit court proceeded to make various factual findings based on the appellate record, and it reversed the county court's order based on those findings. Farneth then sought certiorari review in this court.
In a second tier certiorari proceeding, this court does not conduct a plenary review of the entire case. Rather, this court is limited to reviewing "whether the circuit court afforded procedural due process and whether the circuit court applied the correct law." Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla. 1995). In essence, second tier certiorari functions as a check to ensure that the initial appeal in the circuit court was fundamentally fair, both procedurally and legally. Here, the circuit court applied the correct law when it determined that the county court had failed to conduct a proper Richardson hearing to address the State's alleged discovery violation. However, the circuit court denied Farneth procedural due process when it undertook to make its own factual findings and render its opinion based on those findings.
A fundamental principle of appellate procedure is that an appellate court is not empowered to make findings of fact.
It is the function of the trial court to evaluate and weigh the testimony and other evidence in order to arrive at findings of fact to which the rules of law are then applied. The appellate court has no opportunity to observe the witnesses and thereby to judge their credibility. For this and other good reasons certain rules of review have been formulated that define and limit the appellate function. . . . "[I]t is not the prerogative of an appellate court, upon a de novo consideration of the record, to substitute its judgment for that of the trial court."
Oceanic Int'l Corp. v. Lantana Boatyard, 402 So.2d 507, 511 (Fla. 4th DCA 1981) (quoting Shaw v. Shaw, 334 So.2d 13, 16 (Fla.1976)). Moreover, in the context of a Richardson hearing:
[T]he trial judge must make full inquiry into the circumstances surrounding a violation of the Florida Rules of Criminal Procedure to determine whether the defendant was prejudiced thereby. An appellate court's examination of the record is not a substitute for "a trial judge's determined inquiry into all aspects of the state's breach of the rules."
Cooper v. State, 377 So.2d 1153, 1155 (Fla. 1979) (quoting Cumbie v. State, 345 So.2d 1061, 1062 (Fla.1977)).
*618 Because an appellate court is not entitled to make its own factual findings from the bare record, the proper remedy when the trial court has applied the incorrect law is for the appellate court to remand to the trial court for it to reconsider its ruling in light of the correct law, taking additional evidence if necessary. See State v. Brown, 782 So.2d 526, 528 (Fla. 1st DCA 2001) (remanding for further proceedings when the trial court failed to make the requisite findings after a Richardson hearing); State v. Snell, 391 So.2d 299, 302 (Fla. 5th DCA 1980) (remanding for further proceedings when the trial court had not afforded the State a sufficient opportunity during the Richardson hearing to show that the alleged discovery violation was not prejudicial to the defendant); see also Marshall v. State, 593 So.2d 1161, 1163 (Fla. 2d DCA 1992) (remanding to the trial court for an evidentiary hearing after the trial court applied the incorrect law when considering a Neil[2] challenge); Abrams v. Paul, 453 So.2d 826 (Fla. 1st DCA 1984) (remanding to trial court for evidentiary hearing when the trial court applied the incorrect law when considering the defenses raised).
In this case, once the circuit court determined that the county court had failed to hold a proper Richardson hearing, the remedy was for the circuit court to remand the case to the county court for reconsideration of its ruling after it held a proper Richardson hearing. The circuit court failed to afford Farneth procedural due process, and thus departed from the essential requirements of the law, when it usurped the county court's fact-finding role by making its own findings of fact and reversing the county court's order based on those findings. Accordingly, we grant Farneth's petition and remand with directions to the county court to reconsider its ruling on the State's discovery violation in light of the correct law, taking additional evidence on the issue if needed.
Petition granted.
NORTHCUTT and LaROSE, JJ., Concur.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[2] State v. Neil, 457 So.2d 481 (Fla. 1984).