# Third District Court of Appeal

## State of Florida

Opinion filed September 20, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1136
Lower Tribunal No. 11-39836

_____

**Penny's Investment Corp.,**
Appellant,

vs.

**Alexander Gasamanes and Yeremy Hernandez Prieto,**
Appellees.

An appeal from the Circuit Court for Miami-Dade County, Antonio Marin, Judge.

Benitez & Associates and Leo Benitez and Lizette Benitez, for appellant.

Silver & Silver and Ira S. Silver, for appellees.

Before ROTHENBERG, C.J., and SUAREZ and FERNANDEZ, JJ.

SUAREZ, J.

Penny's Investment Corp. (Penny's) appeals a final judgment granting Appellees Alexander Gasamanes ("Gasamanes") and Yeremy Hernandez Prieto ("Prieto") a refund of their home construction deposits. We affirm.

On March 20, 2011, Appellees executed a Sales Agreement ("Agreement") to purchase a home which was to be constructed by Penny's. Penny's actually executed the Agreement on March 23, 2011 because the person with whom Appellees interacted on March 20th was merely a sales agent for a different entity and was not authorized to execute the Agreement on Penny's behalf. The Purchase price of the home was $239,900.00, and nothing in the Agreement indicated that the price of the home included any additional cost resulting from the location of the lot on which the home was to be built.[1]

It is undisputed that on March 20, 2011 Appellees provided the sales agent with a check in the amount of $5,000.00. It is also undisputed that on March 23,

---

[1] In their Answer Brief Appellees argued that they were not provided a full copy of the Agreement at the time of execution. Appellees' trial testimony on this issue is unclear but can be read as admitting that, in fact, they did have a complete copy of the Agreement. However, that reading of the testimony is undermined by the fact that Appellees' counsel made repeated requests for a complete copy of the Agreement in September and November 2011 and neither Penny's nor its counsel responded to those requests. The question of whether Appellees had a full copy of the Agreement appears to be an issue of fact which the trial court implicitly resolved in favor of Appellees in the Final Judgment. It is not the function of this Court to make its own factual findings and we therefore review this appeal presuming that Appellees did not have a full copy of the Agreement prior to its production by Penny's in this litigation. Underwater Eng'g Servs., Inc. v. Util. Bd. of City of Key W., 194 So. 3d 437, 444 (Fla. 3d DCA 2016), reh'g denied (July 6, 2016) ("In reviewing a judgment rendered after a bench trial, 'the trial court's findings of fact come to the appellate court with a presumption of correctness and will not be disturbed unless they are clearly erroneous.'" (quoting Emaminejad v. Ocwen Loan Servicing, LLC, 156 So. 3d 534, 535 (Fla. 3d DCA 2015))); Farneth v. State, 945 So. 2d 614, 617 (Fla. 2d DCA 2006) ("A fundamental principle of appellate procedure is that an appellate court is not empowered to make findings of fact.").

2011 Appellee Gasamanes went to the offices of the sales agent and delivered two additional checks, one in the amount of $18,990.00 and another for $15,000.00. The Agreement acknowledges receipt of the original $5,000.00 and sets forth a requirement that an "Additional 5% deposit" in the amount of $18,990.00 is due within 30 days after acceptance of the contract by seller. However, the Agreement makes no provision for the $15,000.00 payment. The initial check and the $18,990.00 check total $23,990.00, exactly 10% of the purchase price of the home, and the Agreement indicates that the balance due for the home after the deposits is $215,910.00.

The parties disagree about the purpose of the additional check. Penny's claims it is an additional deposit required for a premium lot and a notation to that effect is written on the memo portion of the check. Appellees testified that they were never advised of any premium price for the location of the home they selected and deny any knowledge of any such additional deposit requirement. It is undisputed that the notation on the check was written in by the sales agent who received the check and not by either Appellee. It is also undisputed that the Agreement does not contain any provision or additional language indicating that the lot selected by Appellees was a "premium lot" or that there was any additional cost associated with the lot.[2]

_____

[2] At some points Penny's has also argued that the $15,000.00 was simply an additional deposit amount. That argument is inconsistent with the Agreement's requirement that Appellees pay 20% of the purchase price and obtain financing for

The Agreement contains a Mortgage Rider which states, in pertinent part:

> THE PURCHASER'S obligation to close the above referenced Contract is subject to the PURCHASER obtaining a Mortgage Commitment in the amount of $191,920.
>
> (A) The PURCHASER agrees to make application with FLORIDA MORTGAGE UNDERWRITERS, INC. the Lender selected by the SELLER and to execute all necessary papers for a Conventional Mortgage Loan (prevailing rates and terms) in the amount set forth above within five (5) working days of date.
>
> . . . .
>
> (C) PURCHASER shall notify SELLER in writing within forty-five (45) days of date hereof if he has or has not qualified for said financing. In the event PURCHASER fails to notify the SELLER in writing within said 45 days period, it shall be **conclusively presumed** that PURCHASER has obtained a Mortgage Commitment in accordance with the terms of this Rider and this sale will proceed as an **all cash transaction**. (e.s.)
>
> (D) If the PURCHASER fails to obtain said Mortgage Commitment and has notified SELLER in writing within the time specified in Paragraph C of this Mortgage Rider, then all deposits made hereunder, will be returned to PURCHASER and this Contract will be null and void and all parties will be relieved of all liability hereunder.
>
> . . . .
>
> (F) IN THE EVENT PURCHASER APPLIES WITH A LENDER OTHER THAN THE ONE SELECTED BY SELLER, THIS CONTRACT SHALL BE

_____

the remaining 80% and is also inconsistent with the merger clause in the Agreement. We therefore reject that claim.

> CONSIDERED AN "**ALL CASH SALE**" (e.s.) PURCHASER SHALL IMMEDIATELY MAKE AN <u>ADDITIONAL</u> NON-REFUNDABLE DEPOSIT OF 10% OF THE PURCHASE PRICE. THIS MORTGAGE RIDER AND THE FINANCING CONTINGENCY SHALL NOT APPLY. FAILURE TO MAKE THE ADDITIONAL DEPOSIT ON TIME SHALL CONSTITUTE A DEFAULT UNDER THE CONTRACT, RECEIPT BY SELLER OF A QUALIFICATION OR PREQUALIFICATION LETTER FROM ANOTHER LENDER SHALL NOT REPRESENT A WAIVER OF THE CONDITIONS SET FORTH IN THIS PARAGRAPH.

In other words, the Mortgage Rider indicates that the sale will be "all cash" under two circumstances: (i) under the "conclusive presumption" which arises if the purchaser fails to notify the seller of a Mortgage Commitment from the seller's chosen mortgage lender within 45 days of the contract date; or (ii) if the purchaser elects to obtain financing from a different lender.

The Mortgage Rider additionally contained a hand-written provision, crafted by the sales agent but initialed by Penny's, which states:

> Seller financing in the amount of $191,900 for a term of 30 years fixed at a rate of 6% with 1% discount pt. no prepayment penalty. Total monthly payment will include principal [sic], interest and escrow payments.

Nothing in that provision indicates that such financing will be considered "all cash"

In September 2011 counsel for Appellees wrote to Penny's and stated that Appellees were required to wait for commencement of construction to apply for a

5

loan commitment and that as a result of delays by Penny's, Appellees were unable to obtain a loan commitment. Counsel also demanded return of the deposits. In response, on September 21, 2011 counsel for Penny's advised that pursuant to the above-quoted printed provisions of the Agreement, Appellees were obligated to apply for financing within five days of the Agreement and/or to notify Penny's within 45 days if they had not qualified for financing. Counsel further stated: "At this point, your client's Sales Agreement is an 'all cash transaction.'"

Inconsistently and confusingly counsel then quoted the hand-written provision for Seller financing and stated: "Your clients have financing available to close the purchase transaction of the Property." This paragraph was Penny's sole reference to an agreement to provide financing in its dealings with Appellee.

Appellees' counsel responded to that letter by requesting a complete copy of all documents signed by Appellees on five occasions between September and November 2011. Neither Penny's nor its counsel responded to those requests. On November 29, 2011 Appellees filed suit demanding return of their deposits. In the Complaint Appellees again alleged that they did not have copies of the documents. Simultaneously, Appellees filed a Request for Production asking for copies of all documents. According to the record, Penny's was served with the Complaint in December 2011, but failed to file an Answer. The record reflects that a default was entered against Penny's.

Despite the pendency of the action, and despite Appellees' counsel's repeated requests for copies of the documents, on February 21, 2012 Penny's counsel sent a letter to Appellees' counsel reiterating the printed terms of the Mortgage Rider and again stating that "At this point, your client's purchase of the Property under the Sales Agreement is an 'all cash transaction.'" Notably, no mention was made of Seller financing, much less the means by which Appellees could avail themselves of such financing. The letter also advised that the Certificate of Occupancy for the Property had been obtained on February 17 and that Penny's expected to close the sales transaction on February 27, 2012. Appellees did not attend a closing on the home on February 27, 2012 and did not otherwise respond to the letter.

As a result of Appellees' failure to appear at the closing, on February 28 Penny's counsel sent another letter to Appellees' counsel again quoting the printed Mortgage Rider provisions, again making no mention of Seller financing and again stating that the purchase was an "all cash transaction" at that point. The letter declared Appellees in default for failing to appear at the February 27, 2012 closing, but also provided Appellees with the opportunity to close on the home on February 29, 2012. The letter warned that if Appellees failed to appear Penny's would terminate the Agreement. Appellees again did not appear for a closing on the home or otherwise respond to the letter. On March 1, 2012 Penny's counsel terminated the Agreement in writing.

Subsequently, Penny's filed an Answer[3] in the pending litigation in which it alleged only that Appellees failed to timely notify it of their inability to obtain a Mortgage Commitment and that Penny's performance under the Agreement was therefore excused. The Answer made no mention of Seller financing. In October 2012 Penny's amended its Answer to include a Counterclaim, but again failed to make any mention of Seller Financing or Appellees' entitlement thereto. Additionally, in March 2013 Penny's moved for sanctions against Gasamanes claiming that he was not entitled to return of any deposits because Prieto had actually written the deposit checks. Again Penny's made no mention of any Seller financing.

In December 2013 Appellees filed a Second Amended Complaint in which they alleged for the first time that Penny's had breached the Agreement by failing to provide the Seller financing evidenced by the hand-written provision of the Mortgage Rider. This appears to be the first pleading or other document in this litigation in which either party made mention of the existence of the agreement to provide Seller financing. Nevertheless, in October 2014 Penny's moved for summary judgment and again failed to argue or otherwise make mention of the agreement for it to provide financing. Instead Penny's relied solely on Appellees'

---

[3] The record is unclear as to setting aside of the prior default, but we presume that such was properly done.

alleged failure to timely advise it that they had failed to obtain a Mortgage Commitment.

In opposition to that motion Appellees argued that Penny's had breached the Agreement by failing to provide the Seller financing as agreed in the hand-written provision of the Mortgage Rider. Appellees filed their own Motion for Summary Judgment on that same basis in December 2014. Neither motion for summary judgment was granted and the matter proceeded to a bench trial.

Penny's Memorandum of Law filed prior to the non-jury trial in this matter is the first mention it made in any pleading regarding the agreement for Seller financing. In that Memorandum Penny's argued that the filing of the initial Complaint constituted a repudiation of the Agreement citing Mori v. Matsushita Electric Corp. of America, 380 So. 2d 461 (Fla. 3d DCA 1980).[4] However, Penny's also acknowledged that it disregarded any such alleged repudiation by proceeding with construction of the home and demanding closing. Acosta v. Dist. Bd. of Trustees of Miami-Dade Cmty. Coll., 905 So. 2d 226, 229 (Fla. 3d DCA 2005) ("Where a party fails to declare a breach of contract, and continues to perform under the contract after learning of the breach, it may be deemed to have

---

[4] In response Appellees argued that Penny's failure to provide them copies of the Agreement prior to filing suit constituted a breach of the implied duty to cooperate. PL Lake Worth Corp. v. 99Cent Stuff-Palm Springs, LLC, 949 So. 2d 1199 (Fla. 4th DCA 2007). Appellees argued that in the absence of a complete copy of the Agreement they had no option but to file suit and that under the circumstances that filing could not be considered a repudiation.

acquiesced in an alteration of the terms of the contract, thereby barring its enforcement.").

After a non-jury trial the trial court entered Final Judgment in favor of Appellees and ordered that they be refunded the $38,990.00 paid, plus interest. The trial court found that Penny's was obligated to provide financing to Appellees and that demanding an "all cash transaction" was contrary to the terms of the Agreement – in essence finding that Penny's had breached the Agreement by demanding such a closing in its February 2012 correspondence. The trial court further found that the Agreement had no provision requiring payment of the $15,000 additional deposit which Penny's characterized as being for a premium lot. Penny's has appealed that ruling.

Initially we note that it appears that this litigation could have been avoided had the parties engaged in <u>both</u> more and better communication. For example, when responding to Appellees' first demand for refund Penny's confusingly demanded an "all cash" closing and stated that it would provide financing. Penny's made no effort to explain how or when or through what mechanism such financing could be secured. In addition, Penny's failed to respond to five requests for copies of the Agreement made by counsel over the course of three months. Under those circumstances Appellees cannot be faulted for concluding that Penny's would not fulfill its commitment to provide financing.

10

However, even if they did not have a complete copy of the Agreement, Appellees are equally at fault for failing to follow up on the portion of Penny's counsel's September 21, 2011 letter which stated that owner financing would be provided. It appears that much confusion and litigation could have been forestalled if either party had initiated discussions regarding the promised Seller financing and how it could be implemented.

On the merits, it is clear from the record that Penny's waived any breach which might be said to have occurred by Appellees' failure to advise it that they had obtained financing from another lender and/or any breach which could be said to have occurred by Appellees' failure to provide the additional 10% deposit called for in the Mortgage Rider if financing is obtained other than through Penny's preferred financing company. It is also clear that Penny's waived any potential initial breach by Appellees in filing the underlying action. We therefore affirm the trial court's conclusion that Penny's breached the Agreement by demanding an "all cash" closing (as that term is used in the Mortgage Rider).[5] In its own Memorandum of Law Penny's acknowledged its disregard of the potential initial breach by Appellees and binding case law supports that having waived that breach,

---

[5] Penny's has argued that the "all cash" term used in its letters did not mean what it said and instead referred to a term of art in which a purchaser appears at a closing with sufficient commitment to pay the seller, regardless of the source of that commitment – i.e. actual cash or promissory note from a different lender or something else. Because the term "all cash" is used in a specific way in the Mortgage Rider, we do not apply the "term of art" as described by Penny's under these circumstances.

11

Penny's may not now rely upon it as a reason for reversal of the trial court's ruling.

Thus, the trial court correctly ruled that Appellees were not liable for any initial breach of the contract. Acosta, 905 So. 2d at 229 (Fla. 3d DCA 2005).

In addition, the trial court resolved any question of fact as to the reasons for the additional $15,000 deposit in favor of Appellees. Where Penny's did not provide any written evidence to support its claim that it was a "premium" for an upgraded lot and where Appellees denied any knowledge of any such premium cost, the trial court acted properly in resolving the factual dispute.

Affirmed.