NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DAVID DUNCAN,                          )
                                       )
          Appellant,                   )
                                       )
v.                                     )          Case No. 2D16-4251
                                       )
THALIA TATHAM BRICKMAN f/k/a,          )
THALIA DUNCAN,                         )
                                       )
          Appellee.                    )
                                       )
_____)

Opinion filed October 25, 2017.

Appeal from the Circuit Court for
Hillsborough County; Richard A. Nielsen,
Judge.

Allison M. Perry of Florida Appeals &
Mediations, P.A., Tampa and Kendra R.
Davis of Law Office of Kendra Davis, P.A.,
Tampa, for Appellant.

Mark A. Neumaier, Tampa, for Appellee.


LUCAS, Judge.

          David Duncan, the father of a minor child, A.L.D., appeals from orders that

emanated from a contempt proceeding in which the circuit court curtailed his

timesharing with A.L.D.  For the reasons that follow, we must reverse.

I.

The protracted litigation between Mr. Duncan and A.L.D.'s mother, Thalia Tatham Brickman, originated in 2006, when A.L.D. was sixteen months old.[1]  Initially, the parties were able to settle several issues, including those relating to the distribution of their property and debts.  Disputes about the rearing of their child, however, remained.  In August of 2008, the trial court entered a temporary timesharing order awarding majority timesharing to Mr. Duncan, while referring the final determination of paternity, timesharing, and child support to a general magistrate.

The general magistrate would not conduct hearings on these issues until the summer of 2010, two years after the referral, and those hearings would continue into the spring of 2011 before a report and recommendation was issued that winter.  Ms. Brickman filed exceptions to the report and recommendation, and in the summer of 2012, now four years after the initial referral, the trial court held a hearing on those exceptions.  Following that hearing, the trial court referred the matter back to the general magistrate for clarification of a procedural issue concerning rebuttal witnesses.  In the meantime, from September 2011 to September 2012, Ms. Brickman had filed five

---

[1]This case began as a dissolution of marriage case.  Ms. Brickman filed a petition for a dissolution of marriage against Mr. Duncan, seeking entry of a parenting plan, child support, and alimony.  Mr. Duncan filed an answer and a motion to dismiss, claiming that the parties never entered into a valid marriage with the intent of being married to one another.  He also filed a counterpetition for paternity, in which he acknowledged that the two parties had A.L.D. in common.  Ms. Duncan filed an "amended petition related to minor child and complaint for damages and other relief," again seeking entry of a parenting plan and child support but also alleging one count of fraudulent inducement and one count of breach of contract.  Ms. Duncan's civil claims were transferred to the lower court's circuit civil division, while the remainder of the amended petition became the operative pleading in this case.  From the arguments presented to us, it appears that the question of whether this couple was ever married has been resolved.

motions for contempt, each alleging that Mr. Duncan had violated the temporary timesharing order, which, four years after its entry, was still the operative timesharing order in effect. The trial court heard these motions in a consolidated fashion over the course of two hearings, one held in the spring, and the other in the summer, of 2013.[2] The hearings concluded, and the presiding judge informed counsel for the parties that he would reserve ruling and render an order at a later time.

The court would not issue that order for three years.

After the contempt hearings concluded, this matter lay dormant for several months until the spring of 2014, when the general magistrate—almost two years after the matter was referred back to him as a result of Ms. Brickman's exceptions—issued a new report and recommendation. Ms. Brickman filed exceptions to this new report and recommendation as well, but for reasons unclear, the trial court did not rule on these exceptions for another two years. While Ms. Brickman's latest exceptions remained pending, the circuit court entered an order on her contempt motions on June 13, 2016.

In its order, the trial court found Mr. Duncan in contempt of the temporary timesharing order, which, by now, had been in force for eight years. As part of its contempt order, the trial court modified the parties' timesharing with A.L.D. Mr. Duncan had enjoyed majority timesharing for the past eight years, but the contempt order purported to grant both parents equal timesharing. In that regard, the order stated:

> The prior order relating to temporary time-sharing is modified
> in the following respects. Mr. Duncan shall no longer have
> temporary majority time-sharing. Instead, temporary time-
> sharing shall be shared such that Mr. Duncan shall have fifty

---

[2]We note that several of the alleged violations concerned conduct on the part of Mr. Duncan that would have occurred two years before the hearing on the contempt motions.

percent time-sharing with the Minor Child and Ms. Brickman shall have fifty percent time-sharing with the Minor Child.

. . .

Mr. Duncan is again admonished to refrain from exercising sole parental responsibility and from conduct that is not conducive to effective co-parenting. Further sanctions may be imposed if Mr. Duncan's improper conduct continues.

This new timesharing arrangement would only last for two months, however, as in August of 2016, the trial court denied Ms. Brickman's exceptions to the general magistrate's second report and recommendation. Unfortunately, the trial court then proceeded to confuse matters through the entry of conflicting orders—the likely result of the prolonged delays in issuing its rulings. On August 19, 2016, the trial court entered a final order of paternity adopting the report and recommendation entered by the general magistrate five years prior. That report and recommendation had recommended that Mr. Duncan receive majority timesharing. As a result, although Mr. Duncan had been stripped of his majority timesharing just two months earlier in the contempt order, the previous timesharing schedule that gave him majority timesharing was effectively reinstated.

Ms. Brickman filed a timely motion for rehearing and clarification of the final order of paternity, pointing out that the court's final order of paternity was based on evidence taken in 2011, while the contempt order had been based on evidence taken in 2013. Thus, Ms. Brickman argued, it was no longer proper for the trial court to fashion a timesharing schedule on the general magistrate's report and recommendation since the magistrate's findings were based upon stale evidence (in comparison to the evidence adduced during the 2013 contempt hearing). The trial court apparently agreed and on August 29, 2016, as A.L.D. turned eleven, entered an order on Ms. Brickman's motion in

- 4 -

which it explained that the timesharing provisions of the contempt order "supersede and control over" those in the final order of paternity—in effect, implementing the timesharing schedule the trial court awarded in its 2016 contempt order.

Mr. Duncan now appeals the clarified final order and the order of contempt that preceded it. We have jurisdiction.[3]

## II.

This paternity case has become something of a procedural quagmire, but the legal issues before us are fairly discrete. Among his appellate arguments, Mr. Duncan points out two shortcomings in the trial court's orders with which we can readily agree. First, as a matter of law, the trial court could not modify a custody order as a sanction for Mr. Duncan's contempt. Second, the contempt order itself—rendered three years after the underlying evidentiary hearing and, in some instances, five years after the allegedly contumacious conduct occurred—cannot stand as a matter of judicial discretion. We address each point in turn.

In parenting disputes such as the case before us, a motion for contempt is ordinarily filed when a parent seeks judicial intervention to enforce an existing parenting plan; as a procedural vehicle to modify a parenting plan, a contempt motion is perhaps less than ideal. See LaLoggia-VonHegel v. VonHegel, 732 So. 2d 1131, 1133 (Fla. 2d DCA 1999) (observing that "the general purpose of a civil contempt order is to obtain

---

[3]Cf. Kelly v. Snietka, 155 So. 3d 1278, 1278 (Fla. 4th DCA 2015) (exercising jurisdiction to review orders entered prior to final judgment in paternity action; "The court may review any ruling or matter occurring before filing of the notice [of appeal]." (emphasis omitted) (quoting Fla. R. App. P. 9.110(h))).

compliance with the trial court's initial order").[4]  Regardless, one prohibition has emerged and remained clear.  A court cannot modify timesharing as a sanction for a parent's contempt of a custody order.  See Hunter v. Hunter, 65 So. 3d 1213, 1214-15 (Fla. 2d DCA 2011); Simpson v. Young, 884 So. 2d 186, 188 (Fla. 2d DCA 2004); Pelliccia v. Arce, 867 So. 2d 619, 620-21 (Fla. 2d DCA 2004).  As we explained in VonHegel:

> The sanction of changing custody does not coerce compliance; rather, it may, in the absence of a finding that such a change is in the best interest of the children, penalize the children for the parent's contumacious conduct.  In comparison, an award of make-up or additional visitation may serve both to redress the wrong to the parent and to effectuate compliance with the court's authority.

732 So. 2d at 1133.

It is clear to us that the trial court modified Mr. Duncan's established timesharing with A.L.D. as a sanction for Mr. Duncan's conduct.  Indeed, Mr. Duncan's contumacious actions, and the provisions of the temporary order that he violated, were the only stated reasons for why the court modified A.L.D.'s timesharing schedule.  And the order's admonishment towards its conclusion, that Mr. Duncan might be subject to "further sanctions" if his "improper conduct continues," leaves no room for doubt what underlay the court's decision to modify the prior timesharing schedule.  The trial court sanctioned Mr. Duncan by reducing his timesharing with A.L.D., which was improper as

---

[4]Those courts that have permitted timesharing modification in the context of a contempt proceeding have taken care to point out that the moving party had affirmatively alleged and proven a substantial change in circumstances, that the minor child's best interests required the modification, and that sufficient notice of the proposed modification was afforded to the nonmoving party.  See, e.g., Cockrell v. Kinnett, 177 So. 3d 1041, 1042-43 (Fla. 5th DCA 2015); Campbell v. Campbell, 100 So. 3d 763, 765 n.3 (Fla. 4th DCA 2012).

- 6 -

a matter of law.  That error alone would warrant reversal of the trial court's orders.  See Hunter, 65 So. 3d at 1215; Simpson, 884 So. 2d at 188; Pelliccia, 867 So. 2d at 621; VonHegel, 732 So. 2d at 1133.

There is an additional basis for reversal of the trial court's contempt order that we must also touch upon.  The proceedings below were marked by repeated, unexplained delays between the conclusion of evidentiary hearings and rulings from the trial court.  See Fla. R. Jud. Admin. 2.215(f) ("Every judge has a duty to rule upon and announce an order or judgment on every matter submitted to that judge within a reasonable time.").  The most glaring of which was the three-year span between when the trial court completed the hearings on Ms. Brickman's contempt motions and when it finally issued its ruling on those motions.  Such a prolonged period of silence from the court assuredly contributed to confusion in the court's subsequent rulings and consternation for the parents who found themselves in litigation before the court.  As we observed in McCartney v. McCartney, 725 So. 2d 1201, 1202 (Fla. 2d DCA 1999), substantial delays "cause litigants and their counsel needless anxiety and expense.  They also undermine confidence in the judicial system."  See also Ritter v. Dep't of Children & Family Servs., 700 So. 2d 804, 806 (Fla. 5th DCA 1997) (Harris, J., concurring) (remarking that "litigant's rights die because of judicial indecision," and how "it is hard to imagine any excuse for a trial court not ruling within six months from the completion of the evidence").

We ordinarily give deference to a trial court's findings concerning contempt in family law proceedings and review such orders for an abuse of discretion.  See Brooks v. Brooks, 164 So. 3d 162, 163 (Fla. 2d DCA 2015).  But where so much time

- 7 -

elapses between the evidence the trial court considers and the contempt ruling it ultimately issues that we can no longer retain any confidence that the court's ruling was still a reasonable decision by the time of its issuance, that discretion is abused. Cf. Schang v. Schang, 53 So. 3d 1168, 1169-70 (Fla. 1st DCA 2011) ("In family law cases in particular, 'trial courts have a responsibility to render their decisions under circumstances which give no doubt but that the matter was seriously and promptly considered.' " (quoting Falabella v. Wilkins, 656 So. 2d 256, 257 (Fla. 5th DCA 1995))). The trial court abused its discretion by withholding its ruling on Ms. Brickman's contempt motions for three years, and so we are compelled to reverse the trial court's contempt order for that reason as well.

### III.

There may remain a question, perhaps one of vital concern for these litigants: what is the operative parenting plan and timesharing schedule for A.L.D. going forward? It is doubtful that the trial court's entry of the August 19, 2016, judgment (which it later purported to "clarify" by adopting a superseding timesharing allocation from the contempt order that we have now reversed) was ever truly intentional. That judgment, however, has not been appealed in this case. The temporary relief order that was first fashioned when A.L.D. was three years old may no longer be in her best interests now that she is twelve. For more than a decade, these parents have been in litigation over how to rear their child, and so it troubles us to leave them in this state of affairs. But we, as an appellate court, cannot fashion a parenting plan for A.L.D. Cf. Farneth v. State, 945 So. 2d 614, 617 (Fla. 2d DCA 2006) ("A fundamental principle of appellate procedure is that an appellate court is not empowered to make findings of

fact.").  On remand, we encourage the trial court to convene a case management conference to address whether further proceedings are still needed to resolve any parenting disputes that may remain concerning A.L.D.—and to promptly schedule hearings and expeditiously rule upon them if there are.

Reversed and remanded.


CASANUEVA and SILBERMAN, JJ., Concur.