DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

————————————————

KEVIN MARCELLO HALL,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D21-262

————————————————

September 29, 2021

Appeal from the County Court for Lee County; James R. Adams,
Judge.

Kathleen A. Smith, Public Defender, and Heather Sutton-Lewis,
Assistant Public Defender, Fort Myers, for Appellant.

Amira D. Fox, State Attorney, and Leah L. Harwood, Assistant State
Attorney, Fort Myers, for Appellee.

LABRIT, Judge.

    This direct criminal contempt case stems from Kevin Hall's use

of foul curses and epithets during a court proceeding.  We reverse

because the court did not provide Mr. Hall a meaningful

opportunity to introduce evidence of mitigating circumstances and the contempt judgment contains no factual findings.

## Factual Background

The events underlying Mr. Hall's contempt charge occurred when Mr. Hall attended a first appearance hearing over video conference. Mr. Hall—who couldn't see his attorney on the screen and may have had difficulty communicating with his attorney—became extremely agitated and called the judge an array of colorful names, including "mother f*cker" and "b*tch." Mr. Hall also directed threatening comments to the judge, including stating that "I hope you die b*tch," "you're a f*cking dead man," and "I hope you break hell wide open mother f*cker."

Thereafter, the judge immediately asked Mr. Hall if there was "[a]ny reason why [he] shouldn't hold [Mr. Hall] in contempt of [c]ourt." Mr. Hall didn't answer; instead, he repeated his (mistaken) belief that defense counsel was not present and accused the judge and/or the prosecutor of taking a bribe. After defense counsel stated that a referral to "mental health court" was necessary, the judge told the parties that he would "roll it" and to bring Mr. Hall back "tomorrow."

2

The next day, the judge convened a second hearing and told Mr. Hall that he was "holding a proceeding on . . . contempt at th[at] point" and that "[t]his [wa]s [Mr. Hall's] opportunity to say anything [o]n [his] behalf." When the judge asked Mr. Hall if he had anything to say in mitigation, Mr. Hall was silent. Defense counsel told the court that Mr. Hall suffered from a mental illness but did not proffer or introduce evidence of such condition. At the conclusion of that very brief hearing, the judge pronounced Mr. Hall in contempt of court and sentenced him to 120 days in jail. This ruling was not reduced to a written order or judgment. Instead, it was memorialized on an "order/commitment form," reflecting that the judge adjudicated Mr. Hall guilty of contempt and remanded him to jail for 120 days; the form contains no explanation or discussion of the factual basis underlying the contempt adjudication.

Two weeks later, Mr. Hall filed a motion to "correct, reduce, or modify [his] sentence and release [him] from custody" based on his mental illness. The court called that motion up for hearing a few days after it was filed; at that hearing, Mr. Hall apologized for his profane outburst and attempted to explain his history of mental illness, and his counsel asked to introduce testimony from a mental

3

health counselor who was familiar with Mr. Hall's condition and diagnosis. The court declined to receive such evidence but reduced Mr. Hall's sentence to sixty days.

## Analysis

We review orders of direct criminal contempt for abuse of discretion. *Phelps v. State*, 236 So. 3d 1162, 1163 (Fla. 2d DCA 2018). Criminal contempt is "[c]onduct which is calculated to embarrass, hinder, or obstruct the trial court in the administration of justice or that which is calculated to lessen the court's authority or dignity." *Id.* Such conduct "may be punished summarily if the court saw or heard [it]" and it was "committed in the actual presence of the court." Fla. R. Crim. P. 3.830.[1]

"Because of the summary nature of direct criminal contempt proceedings, defendants are not entitled to the full panoply of due process rights typically afforded to criminal defendants." *Phelps,*

---

[1] The 2020 version of rule 3.830 governs this appeal because Mr. Hall was convicted before the rule was amended in April 2021 and there isn't "a clear expression of intended retrospective application" in the latest version of rule 3.830. *Love v. State*, 286 So. 3d 177, 187–88 (Fla. 2019) ("[T]he 'commonsense' application of a new procedur[al rule] generally 'depends on the posture of the particular case' "). For that reason, we cite the 2020 version of rule 3.830 throughout this opinion.

4

236 So. 3d at 1163. However, courts must protect due process rights in contempt proceedings, particularly "where incarceration [i]s at issue." *Id.* (alteration in original). For that reason, trial judges must "scrupulously follow[]" the procedural requirements of rule 3.830. *Id.* One of those requirements is "includ[ing] a recital of those facts on which the adjudication of guilt is based" in the contempt judgment. Fla. R. Crim. P. 3.830. Additionally, the defendant must be provided notice and "the opportunity to present evidence of excusing or mitigating circumstances." *Id.* Failure to follow these procedural requirements is fundamental error. *Phelps*, 236 So. 3d at 1163–64.

The parties agree that the county court's failure to issue a judgment with factual findings did not comply with the requirements of rule 3.830. Reversal is required for this reason alone. *See Cutwright v. State*, 934 So. 2d 667, 668 (Fla. 2d DCA 2006); *see also Phelps*, 236 So. 3d at 1163.

Moreover, the record establishes that Mr. Hall was not provided a meaningful opportunity to present mitigating evidence.[2] While the court paid lip service to rule 3.830 at the contempt hearing by asking Mr. Hall if there was "[a]nything [he] wish[ed] to say in mitigation," Mr. Hall and defense counsel were told only moments before that the court was hosting a contempt proceeding "*at that point*"—leaving defense counsel no meaningful chance to gather mitigating evidence.[3]

To make matters worse, by the time defense counsel had the opportunity to gather evidence of Mr. Hall's mental illness, the court

---

[2] Mr. Hall did not address this issue in his brief, but it is a fundamental error that is apparent on the face of the record, and we are obligated to correct it. *See Phelps*, 236 So. 3d at 1164.

[3] We note that the first appearance and contempt hearings occurred on consecutive days in late March 2020, just as various emergency restrictions associated with the COVID-19 pandemic were being implemented. The court did not make clear at the first appearance hearing that it intended to host an evidentiary contempt hearing the next day; after all, the judge terminated the first appearance hearing when defense counsel suggested a mental health referral. Even if the court had specifically announced its intention to hold a contempt hearing the next day, it is possible (and understandable) that—because of the rapidly unfolding dynamics associated with implementation of COVID-19 restrictions—defense counsel did not have an adequate opportunity to discover and secure evidence concerning Mr. Hall's mental condition in time to proffer such evidence at the hearing.

refused to consider it.  Specifically, at the hearing on Mr. Hall's motion to correct or modify the contempt judgment, the court rejected defense counsel's proffer of testimony from a mental health counselor familiar with Mr. Hall's condition.  The trial court's failure to consider evidence of Mr. Hall's mental illness constituted a denial of Mr. Hall's right to due process.  *See* Fla. R. Crim. P. 3.830 ("The defendant ***shall* be given the opportunity to present evidence** of excusing or mitigating circumstances." (emphasis added)).  Reversal is warranted for this reason as well.  *See Phelps*, 236 So. 3d at 1164.

Mr. Hall also disputes the merits of the contempt judgment, arguing—as he did below—that his profane outburst was caused by mental illness, rather than criminally contemptuous intent.  We agree that intent is critical to a contempt judgment.  *See Riley v. State*, 293 So. 3d 34, 35 (Fla. 2d DCA 2020) ("One's intent to act in contempt must be proven beyond a reasonable doubt."); *Phelps*, 236 So. 3d at 1163 (stating that the defendant's conduct must be "*calculated* to embarrass, hinder, or obstruct the trial court" (emphasis added)).  The same procedural flaws that require reversal of the contempt judgment render Mr. Hall's merits argument

7

unreviewable.  **First**, the court never issued a written judgment, so there are no factual findings regarding Mr. Hall's intent, and we are not empowered to make such findings.  *See Farneth v. State*, 945 So. 2d 614, 617 (Fla. 2d DCA 2006).  **Second**, since the judge refused to consider evidence of Mr. Hall's mental condition, there is no record that would permit us to evaluate the merits of Mr. Hall's defense.

By failing to adhere to the procedural due process requirements of rule 3.830, the trial court abused its discretion.  Accordingly, we reverse the contempt judgment and resulting sentence.  *See Phelps*, 236 So. 3d at 1164.

Reversed.

MORRIS, C.J., Concurs.
ATKINSON, J., Dissents with opinion.


ATKINSON, J., Dissenting.

Mr. Hall has never once—neither in the trial court nor on appeal—indicated that he was deprived of a meaningful opportunity to present evidence of excusing or mitigating circumstances.  *See* Fla. R. Crim. P. 3.830 (providing that "criminal contempt may be

8

punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court" but requiring an opportunity for the defendant to "present evidence of excusing or mitigating circumstances").  Moreover, nothing in the record suggests that the trial court denied any meaningful request for additional time to prepare a defense or for an opportunity to present additional evidence.  I, therefore, respectfully dissent.

I would remand for entry of a judgment that complies with the requirement of a written judgment that includes "a recital of those facts on which the adjudication of guilt is based."  Fla. R. Crim. P. 3.830; *see also Jackson v. State*, 779 So. 2d 379, 379–80 (Fla. 2d DCA 2000) ("affirm[ing] the trial court's finding of direct criminal contempt" because the contemnor's "contemptuous behavior occurred in the presence of the trial court, frustrated an ongoing proceeding, and is apparent on the face of the record" but remanding for entry of a judgment complying with rule 3.830 "because the judgment itself did not contain a recital of the facts upon which the adjudication was based" (citing *McGlamory v. State*, 723 So. 2d 388 (Fla. 2d DCA 1999)); *McGlamory*, 723 So. 2d at 388–

89 ("We find no error in the trial court's determination that McGlamory's conduct constituted contempt of court," but "we reverse McGlamory's criminal contempt order and remand the case with directions that the trial court render a judgment in compliance with rule 3.830."); *Cutwright v. State*, 934 So. 2d 667, 668 (Fla. 2d DCA 2006) ("Because the written judgment in this case fails to specify the conduct upon which the adjudication was based, we must reverse Cutwright's criminal contempt order and remand with directions that the trial court render a judgment in compliance with rule 3.830." (citing *McGlamory*, 723 So. 2d at 388)).

———————————————

Opinion subject to revision prior to official publication.